# H. C. Frick Coke Company *v.* Painter.

*Railroads—Lateral railroads—Province of court and jury.*

The necessity for a lateral railroad on the route selected by the petitioner is a question for the jury under proper instructions by the court. The jury, however, cannot take into consideration that a better, cheaper and more convenient route might have been selected. This is a matter entirely within the discretion of the petitioner.

*Lateral railroads—Railroads—Damages.*

In assessing damages for the taking of land for a lateral railroad, the measure of damages is the difference in the market value of the whole property immediately before and after the construction of the road as affected thereby.

A verdict and judgment in a lateral railroad proceeding will not be reversed by reason of any deficiency in the charge, where the trial judge carefully directed the jury's attention to the evidence offered on behalf of the plaintiff as to various matters affecting the value of the land, and required the jury in ascertaining the damage sustained by the plaintiff to consider everything that injuriously affected his property.

*Railroads—Lateral railroads—Condemnation proceedings—Eminent domain—Separate tract.*

In proceedings to condemn land for a lateral railroad, where it appears that the land affected had at one time been divided into two separate farms owned by different parties, and that the owner at the time of the proceedings had derived title from these parties, it is proper to treat the land as one tract in assessing the damages occasioned by the construction of the road.

In proceedings to condemn land for a lateral railroad, where the pleadings specify particular land as affected by the construction of the road, and the trial has proceeded upon that theory, the landowner cannot show that other land owned by him was damaged by the construction of the road.

Argued Jan. 28, 1901. Appeal, No. 73, Oct. T., 1900, by plaintiff, from judgment of C. P. Westmoreland Co., Feb. T., 1900, No. 63, on verdict for plaintiff in case of the H. C. Frick Coke Company v. Morris L. Painter et al. Before McCOLLUM, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Appeal from the report of a jury of view in proceedings to condemn land for a lateral railroad. Before McCONNELL, J.

At the trial, when J. P. K. Miller, a witness for the plaintiff was on the stand, he was asked this question:

" Q. Do you know how he would get from the Hartsell to the Bash coal or how his right of way carried him? A. Part of the way, the greater part of the way, will be through coal. Q. Through outcrop coal? A. Outcrop coal. Their engineer claims it will all be through coal. That I don't know. My opinion is, that part of it will be across surface land of Hartsell. Q. What kind of railroad or method of transportation would have to be used through a place like that?"

Defendant's counsel object and ask for the purpose of the question.

This question is asked for the purpose of showing that the present route is not necessary for the purpose of developing the defendant's coal, and along with other testimony for the purpose of showing that another or other routes are more practicable and convenient and doing no more damage to the plaintiff.

This is objected to as incompetent and irrelevant. It is not the province of the court or jury to pass upon the question of the necessity for the route. The question is whether there is necessity for the road in order to develop this coal, and whether this body of coal taken in connection with the petitioner's proposed use is such an undertaking as would entitle the defendant to the benefit of the right of eminent domain.

The Court: We will follow in the remarks that we have to make, the line of discussion mapped out by the discussion of the issues involved, rather than in view of the specific question which has been placed upon the record.

The lateral railroad act contemplates the right to construct a railroad over the land of another in a case where that is necessary, and now the necessity is for adjudication by the jury in this case. That necessity springs out of either a private purpose, or a public purpose, or the concurrence of these two things. A private purpose comes from the ownership of certain property which the owner thereof seeks to utilize by placing it upon the market. The public perhaps or a public purpose is subserved when that article of commerce is brought into the public channels of commerce.

The right of constructing a railroad—a lateral railroad—is not given to a private owner except where that proposed railroad is tributary to some public channel of commerce. Where

an owner of property, which he desires to place upon the market, already has the means of doing so, the private purpose of the act does not exist. Where the public channels of commerce already have the benefit of that property the public necessity does not exist. Therefore, the showing in the trial of a case that both the public and private purposes contemplated by this act were already subserved, would be a showing that the necessity for the construction of a road across the land of another did not exist. That would be a defense.

But we do not understand it that it would constitute a defense to show that a cheaper route than the one proposed could have been taken. This court and this jury would have nothing to act upon unless the petitioner had already located the route. That power and that right is given to the petitioners themselves. They propose; the court and jury must dispose of the thing proposed. It is either the thing proposed or it is nothing. So that it is perfectly plain that there shall be a route sharply defined—clearly defined—and the question of the necessity of that route is to be passed on as one of the questions involved in the trial of a case.

The proposition that is made here is substantially to show that another route might have been taken which would have minimized the amount of damage that would have accrued to the plaintiff in this case. The effect sought by the testimony would be not to deny a public or private necessity, but to allege that another route, admitting the necessity to exist, to reach the coal would have entailed a smaller amount of damages on the present plaintiff and might have been taken.

The safeguard against a petitioner proposing an unnecessarily expensive route lies in the fact that he has to pay for it, and therefore he will not be likely to unnecessarily resort to a route that will make him pay more than the private necessities of his case demand.

We think, therefore, that the admission of testimony to show that a shorter route might have been taken, or that a less expensive route might have been taken, does not have application to the necessity that is contemplated by this act of assembly. It does not constitute a defense on that issue. It has in practical effect a bearing upon the other issue, namely, the extent of the damages, but we do not think that it tends to establish the

lack of necessity, such as contemplated by this act of assembly, to admit evidence of engineers and others to show that another less expensive route might have been pursued.

If there is a proposition to show that the public and private purpose which these acts is intended to subserve is already subserved by the existence of another route which is available to these defendants, that is perfectly pertinent, and we think all of the cases have gone to that extent that have touched upon that question. Where there is an existing mode of conducting this private property to the public channels of commerce, we think that matter may be shown, to show that there is the absence of the necessity that the act of assembly contemplates. But we do not think that merely the matter of reducing the amount of damages is a showing that the necessity contemplated by this act does not exist.

Therefore we sustain the objection, to the extent indicated in the views we have just now expressed, and a bill may be sealed for the plaintiff. [6]

Mr. Head: The plaintiff now proposes to prove that all of the coal of the defendant under the several properties mentioned and described in his petition may be carried over his own property, or the property he controls or rights of way now owned or controlled by him to the southwest corner of the property known as the Keck property, which is substantially on the line of the Mammoth Branch of the Southwest Pennsylvania Railway, and thereafter by the construction of a siding of the kind and character usually constructed to reach all similar operations along the main line of said railroad; and that the said coal may be carried to market without the use of any lateral railroad at all over the property of any other person than his own. This for the purpose of showing that there is no necessity for the proposed railroad.

Mr. Williams: We object to the offer as incompetent, immaterial and irrelevant, unless the plaintiff proposes to show that the property of the defendant abuts upon the Southwest Pennsylvania Railway without any intervening lands between such property and the railroad.

The Court: That objection is sustained. Exception to the plaintiff's counsel. [7]

"Q. Do you know what water is worth per oven per day;

that is, where the company has to buy water, or other companies in the coke regions have to buy water?"

Counsel for defendant objects and asks that the purpose of the question be stated.

Plaintiff's counsel ask this question for the purpose of showing that if we cannot furnish a water supply ourselves, and have to get it elsewhere, how much it will cost us to get it.

Objected to by counsel for the defendant.

The Court: I think that is too remote from the question we are trying. The question of the depreciation of the value of this property is the only thing at issue. Objection sustained. Exception. [8]

When O. W. Kennedy, a witness for plaintiff, was on the stand, he was asked this question:

" Q. Do I understand then, Mr. Kennedy, that if the defendant had a right of way over that ten or twelve hundred feet of ground which you say belongs to the H. C. Frick Coke Company, he would have a right of way connecting his coal with the Southwest Railroad?"

Mr. Williams: We object to the question; it is incompetent, immaterial and irrelevant.

The Court: The objection is sustained. Exception. [9]

" Q. Do you know whether or not your company is willing to give him a right of way over that property?" ·

Mr. Williams: We object to the question as incompetent, immaterial and irrelevant.

The Court: Objection sustained. Exception.

" Q. Do you know whether or not there is an executed paper for that purpose? A. Yes, sir. Q. I show you paper marked plaintiff's exhibit 3, and I ask you to state what signature is attached to the end of that paper if you know? A. The president of the H. C. Frick Coke Company, Thomas Lynch. Q. You know his handwriting, do you? A. Yes, sir."

The plaintiff now proposes to prove by the witness on the stand that the defendant has a right of way over his own property from the Bash or Haberlin coal connecting the Hartsell coal to the Keck coal to a point within about 1,000 feet of the present Mammoth Branch of the Southwest Pennsylvania Railway Company; that the only intervening property between the terminus of this right of way over the defendant's own prop-

erty and the Mammoth branch, is property of the plaintiff, and the plaintiff now tenders to the defendant, and asks leave to file for his benefit, a grant of the right of way across this property, so as to give him a continuous way over the farthest piece of property owned by him and described in the pleading in this case, to the Mammoth Branch of the Southwest Pennsylvania Railway Company. This to be followed by evidence that such a way would be adequate and practicable for the defendant, and that having thus a complete right of way over his own property and over the property of the plaintiff vested in him by this paper, there is no necessity for the construction of a lateral railroad over other property of the plaintiff, and especially no necessity for the construction of the proposed railroad.

Mr. Williams: We object to the offer as incompetent, immaterial and irrelevant, for the following reasons:

1. The paper tendered does not grant the right of way alleged in the offer; at most, it is but an ex parte agreement or proposition to grant such a right of way in consideration of the defendants doing something else.

2. It is already in evidence that Painter does not own the coal to the outcrop near the junction of his property with the Southwest Railroad mentioned in the offer, but that the intervening coal is owned by one Keck and one Rumbaugh.

3. It is already in evidence that the coal of this district is coking coal, and that the product of the mines is manufactured into coke, in which shape it is marketed.

It is also in evidence that the defendant, Painter, is the owner of a plant of coke ovens in the process of erection and partly completed for the manufacture of coke from his mines.

The proposed offer does not make any provision for the substitution of another plant or location for a plant on the lands of the plaintiff, and on its face shows the inadequacy of the provision made for transportation of the coke from the ovens of the defendant, now erected, and in process of erection.

The Court: The issue that we have to dispose of was framed by papers filed in the case, and anything that relates to the disposition of the question thereby raised, is proper for consideration by this jury; one of the things that this jury had to deal with in the disposition of that issue, is the necessity of the lateral railroad as proposed by the defendant in this case.

Anything which would show the nonexistence of the contemplated necessity, would, of course, be pertinent evidence in this case. But we do not understand the present offer to show or to tend to show the nonexistence of the kind of necessity that is contemplated by this act of assembly. We think that the necessity contemplated by that act of assembly springs from a consideration of the situation, the existing situation of the party that proposes to build the lateral railroad, or a consideration of the interest which the public has in the development of the resources of the state.

The necessity contemplated by this act of assembly is similar to the necessity contemplated in the laying out of a public or a private road. The present offer does not pertain to either of these two necessities, either the public or the private. It does not show an existing situation. At most, we think it is but a proposition to settle the issue, that this jury is empaneled to try. It does not purport to show the condition of things at the time that this proposition was submitted, and that this issue was framed in order that that proposition might be disposed of. It is something that bears date as of the present day. Whether the present defendants ought to accept this proposition or not is not a thing for this jury to consider.

Whether there is some other location than the one proposed by this defendant which would do less damage, is not a thing for this jury to consider. The jury and this court do not deal with the question of location. The question of location is as absolutely committed to the defendants in this case as it is absolutely committed to a railroad itself that proposed to locate a lateral railroad to its main line. So that the law having committed that matter elsewhere than to the consideration of this jury and of this court, we have nothing to do with it. If the purpose was to show that this defendant had another way of marketing the product of his land, that the commonwealth is interested in having it marketed, we would admit such testimony. But that is not a proposition to show anything of that sort. It is a proposition to abandon the present proceeding and to exhibit another route which the plaintiff this day offers and tenders to the defendant. Therefore, the objections are sustained and the offer overruled.

Exception to plaintiff's counsel. [10]

" Q. Mr. Kennedy, as we understand, you have not any estimate of the damages done to the surface of this property and of the cost of fencing, and strips cut off? You have not made any estimate of that, have you? A. No, I have not. Q. Are you able to give us an estimate of the damage or injury that will be done to the property of the company by the construction and operation of this lateral railroad as it affects your water supply, and any disturbance it may cause in the mining of your coal, and especially in the shallow operations thereunder, and if you are, let us know what, in your judgment, would be the damages that it would do."

Mr. Williams: We object to the question as impertinent, irrelevant and immaterial, and as not affording the proper measure of damage in a case of this character.

The Court: I do not think the witness has the right to consider the damages piecemeal. It is not to be paid piecemeal. The witness having indicated that there are other elements of damage than those to which this question pertains, we do not think that he is to be allowed to give an opinion about the effect of part of the elements of injury without taking into consideration in that estimate all of the elements of injury that he has testified about, and considering them in the totality of their effect.

The objection is, therefore, sustained, and the witness will be allowed to give an opinion expressed in dollars and cents to the extent of the elements of injury that he has testified about, if he will show that he has the necessary knowledge to enable him to measure the extent of those injuries in dollars and cents. But he cannot be allowed to place estimates of injury on a part of his estimate alone.

Exception for the plaintiff. [11]

M. L. Painter was asked on cross-examination this question:

" Q. The Mammoth works has both a shaft and a slope? A. Yes, sir. Q. And equipped for the work of mining coal and manufacturing coke? A. I believe so, yes, sir. Q. A large lot of ovens at that place I believe? A. Yes, sir. Q. Now, Mammoth slope is nearer to this than the shaft, is it not? A. Well, perhaps it is. Q. Do you think there would be any necessity for the plaintiff company to have another opening to get this Baker or this Brinker coal?"

Objected to as incompetent and immaterial and not proper cross-examination.

The Court: The objection is sustained. Exception. [12]

" Q. Mr. Painter, I will ask you if you do not know from your knowledge of the coal in that vicinity and from observation, that the coal under the Brinker and Baker tracts is essential to the life and value of the plant known as the Mammoth slope—to give it reasonable life ? "

Objected to for the reason that the question is not proper cross-examination, is immaterial and irrelevant, and if material at all, was a matter for the plaintiff in chief and cannot now be supplied by cross-examination.

The Court: The objections are sustained. Exception. [13]

W. G. Muse, a witness for defendant, was asked this question:

" Q. State whether or not, in your judgment, the lands of the plaintiff in this case are appreciated or depreciated in market value by the location and construction of this railroad—are or will be ? A. Considering this property as a property by itself, that is, these two tracts over which this projected road runs, it is my opinion that the value—"

Mr. Moorhead: We object to the answer of the witness having reference to the two particular properties by themselves, as it is necessary that the witness should consider the property of the H. C. Frick Coke Company in connection with the Mammoth mines in its entirety, as so far as it is concerned it is but one property.

The Court: It is essential that the witness confine his judgment to the property in its entirety. I did not understand that the witness was going to give any other judgment, however. The witness can answer the question confining his answer to the property in its entirety and not to its effect upon a particular part of the property.

The question may be directed to the property that has been described in this issue. We have been trying it on that description all along. If the parties seek to bring in the issue something else than that, there would have to be a different set of pleadings framed. Objection overruled. Exception. [14]

Last question read by stenographer.

" A. The value is increased. Q. To what extent in your

judgment, Mr. Muse? A. Well, to place that in dollars and cents is rather a difficult matter to me. I should think though, largely in excess of the depreciation. Q. Supposing, Mr. Muse, that the plaintiff in this case has an opening known as the Mammoth slope, and that around that opening it has a body of coal of some 600 or 800 acres, that that body of coal tributary to that opening embraces the Baker tract and the Brinker tract, and that that coal can all be taken out at the Mammoth slope in the ordinary method of mining operations. I ask you whether under such circumstances you would say that the location and construction of this railroad in the way you have seen it would be any benefit to that property in its entirety?"

Counsel for defendant object and ask for the purpose.

Mr. Moorhead: This question is asked for the purpose of showing that there is no benefit in the market to the property of the plaintiff as an entire property.

To which counsel for defendant object as not proper cross-examination and belonging to the plaintiff's case in chief, and cannot now be injected into the case.

The Court: The plaintiff having introduced evidence tending to show the depreciation of a particular property and having shown this, pursuant to the issue that is now framed, cannot introduce a new issue and ask about the appreciation or depreciation of some other property that is not defined by the previous testimony or by the issue as framed. The question of damage to the property is to be considered regardless of the present or any future owner, and the thing that is to be compensated for is the depreciation in the market, and it is not to be looked at with the eyes of the present owner, but is to be looked at with the eyes of the market. The question that is now asked does not relate to the issue that is on trial and is overruled. Exception. [15]

The court charged in part as follows:

[The determination of the location is just as clearly committed to the keeping and determination of the petitioners, the individual petitioners in this case, as it is committed to the keeping of a railroad, in a case where a railroad itself constructs a lateral railroad. And the determination of that location by the petitioners in this case is just as conclusive on a jury that con-

siders the damages as it is conclusive on a jury that would consider the damages in a case where the railroad had taken the initiative. The acts of assembly providing for these things are different, but the effect of those acts of assembly, in that regard, is the same.] [1]

[As we understand it, there are two pieces of land which were originally separate farms, but have been brought into one ownership, and that there is in the hands of the present owner some sort of physical connection, whereby they now constitute one property, and to that property the defendants propose to apply the easement which they seek to exercise in this case, and the question we want to know is whether, assuming that they have the right to subject this property to such easement, that has depreciated the value of this property in the market.] [2]

Plaintiff's points were as follows:

1. On the trial of this appeal, the first question to be disposed of by the jury is the necessity of the proposed railroad on the route marked out by the defendant. The burden of establishing the fact that such railroad is necessary, is on the defendant who petitions for the road. This necessity, within the meaning of the act of assembly, is not an absolute, but a reasonable one. In determining it, you will take into consideration, not only the testimony of the witnesses, as you have heard it during the trial, but also the physical conditions of the property as you saw them on the ground. If you determine that the present railroad, on the route selected and marked by the defendant, is not so necessary for the development of the property of the defendant, you will so find, and this will relieve you from any further consideration of the case. *Answer:* We see nothing wrong with that point, except in the one sentence about the middle of it, and on the argument on these points the significance of that was further emphasized. You probably heard in the early part of this case, and, if that is not too remote for you to recollect, you may remember, that the question then ruled was whether certain evidence which the plaintiff proposed to introduce, tending to show that the route proposed by the defendants in this case did greater damage to the plaintiff in the case than was necessary, and therefore that the road was not necessary at this point. This sentence in the

point that I refer to is designed, as we are informed, to invoke a ruling upon substantially the same question, not based, however, on the evidence (that you did not get), but based upon what you observed on the land yourselves.

We said in the general charge that the question of location was not to be determined by this jury, either directly or indirectly, in disposing of the question of damages. The necessity contemplated by that act of assembly is not the kind of necessity that is contemplated by this point, namely, some physical necessity that may be apparent on the plaintiff's land, which necessity has relation to the extent of the damages that would accrue to the plaintiffs. Damages are one thing. Location is another and distinct thing. Necessity for a resort to the power of eminent domain is still another thing. We cannot say that you are entitled, in disposing of the question of damage, to decide what has not been committed to you. You have a right to dispose of the question of damages. You have a right to dispose of the kind of necessity that we have already defined, but you have not the right to dispose of the question of location and say that, according to your judgment, some other location could have been selected that would have done less damage and, therefore, that there is no necessity for this location. That is not the kind of necessity that you have a right to deal with. Therefore, this point is refused. [3]

2. If the jury find from the evidence that the construction and operation of the proposed lateral railroad will disturb the operation or endanger the safety of the mines of the plaintiff, then, under the law, the route marked out cannot be taken from the plaintiff, and, on that point, which would be conclusive of the whole case, your verdict should be in favor of the plaintiff. *Answer:* That, as an abstract proposition of law, is correct. We will have more to say about that in disposing of the next point. [4]

3. The law of Pennsylvania only gives to one person in the property of another the right or privilege claimed here, when such right or privilege will not disturb the mining operations of another; if, therefore, you find from the evidence in the present case, that the construction and operation of this lateral railroad will disturb or interfere with the mining operations of the plaintiff, either by subjecting its employees to increased danger

in mining its coal, or by requiring a change of present or projected plans of operating the mines, or by polluting or curtailing its water supply, your verdict must be for the plaintiff, on this point, and further inquiry on the subject of damages would be unnecessary. *Answer :* You will observe that this point goes further than the other and attempts to specify the mode of interference, and this point asks us to say that such mode of interference would require you to find a verdict in favor of the plaintiff in this case. This point and the one immediately preceding it, is based on an express provision of the act of assembly passed in 1883, and not on the original lateral railroad act according to the form that was then adopted. This provides "that it shall be lawful for the owners or lessees of iron ore or coal mines to construct lateral railroads." There were acts before this that enabled owners of iron ore or coal mines to construct lateral railroads. This act goes further and says owners or lessees shall have the right. It broadens the scope of the other acts in that respect. This was enacted in view of the fact that sometimes coal mines and iron ore mines were leased to persons who were operating such mines and the interests of such lessees required that they have the right to construct lateral railroads as well as owners. Therefore, this act was passed, or at least, that is one of the respects wherein it enlarged the scope of the previous legislation. This act, as well as some previous acts, provided that these lateral railroads could be constructed "from said lands to any railroad, public road or navigable stream, over or under, or partly over and partly under, the surface of intervening lands." So that this legislation contemplates the fact that owners and lessees can construct railroads under the land of another person as well as over the lands of another person. They are not confined to the placing of their structure upon the surface. They may go under the land.

Now, there is to this act, a proviso that constitutes the basis of these two points, and that proviso is, that "said lateral railroad shall not extend beyond the limits of the county in which said mines may be situated, nor pass through, disturb the operating, or endanger the safety of any other mine, and the proceedings to obtain said lateral roads shall be according to the provisions of the act of May 5, 1832, and the supplements thereto. . . . . Shall not pass through, disturb the operating, or endanger

the safety of any other mine." That is the clause upon which these propositions are based.

The evidence is for you to deal with. We do not recall that there is evidence that in the property under your consideration there is at present any coal mine. There is coal there that may be mined. The feature which we think vivifies this proviso is the fact that there was a possibility of running through mines, operated by the owners of them, wherein they may have their own railroads and tramways and so on, along which their own workmen may pass and repass, and that such operating by the owner of the mines might be interfered with, by the exercise of the right hereby given to another, and it was to forbid such interference, in the mines of another, that this proviso was appended. A different arrangement of substantially the same words would perhaps emphasize this still more strongly when we say "that they shall not disturb the operating of any other mine or endanger the safety thereof"—"they shall not pass through so as to disturb the operating or endanger the safety of any other mine"—is the thing that we attempt to say. We think that this "passing through" is a very expressive phrase, in the mind of the draftsman of this act, and the "disturbing and endangering the safety" takes something of the same coloring as the "passing through the mine of another."

We cannot see, therefore, that the respects wherein such interference may take place, as there expressed in this point, are the respects wherein the interfering was intended by this proviso, and the point must be refused. As we said before, we do not think that you have before you evidence that there is a coal mine under the land that we are considering, and certainly we do not have any evidence that the operating of a coal mine under this land is disturbed or endangered by any such "passing through" of the proposed railroad, and that is sufficient for the disposition of this point. I do not think that the respects wherein interference may take place, that are adverted to in this point, are the kind of things that forbid the construction of this railroad. The point is refused. [5]

Verdict and judgment for plaintiff for $2,200. Plaintiff appealed.

*Errors assigned* were (1–5) above instructions, quoting

them; (6–15) rulings on evidence, quoting the bill of exceptions.

*James S. Moorhead*, with him *John B. Head*, for appellants.—The jury should be permitted to determine whether the present route is reasonably necessary: Boyd v. Negley, 40 Pa. 377.

The offer by defendant in the fourteenth assignment to show the advantages to these two tracts was admitted, and our offer in the fifteenth assignment to show that there was no advantage to the plaintiff's property as a whole was excluded. We think this was erroneous: Potts v. Penna., etc., Railroad Company, 119 Pa. 278; Rudolph v. Penna. Schuylkill Valley R. R. Co., 186 Pa. 541; Ehret v. Schuylkill, etc., R. R. Co., 151 Pa. 158.

We understand by the authorities that the uses for which the property is reasonably available are to be considered by the jury in estimating the damages. Its value may be shown as farming land; as a town site; for factory purposes, each and all estimates being given for the purpose of showing its market value and its depreciation in value if taken, in part, from the owner. Here it is very valuable as a site for an additional storage of water which cannot otherwise be obtained: Pittsburg, etc., Ry. Co. v. Vance, 115 Pa. 327; Kersey v. Schuylkill River East Side R. R. Co., 133 Pa. 234.

*V. E. Williams*, with him *A. M. Sloan* and *W. A. Griffith*, for appellee.—The sovereign power vested in the state to take private property for public use providing, first, a just compensation therefor: Trenton Cut-Off R. R. Co. et al. v. Newtown Electric Street Railway Co., 8 Pa. Dist. Rep. 549; Brown v. Corey, 43 Pa. 495; Shoenberger v. Mulhollan, 8 Pa. 134; Cleveland & Pittsburg R. R. Co. v. Speer, 56 Pa. 325.

When a railroad company condemns land, it is of necessity the judge of how much is required for its use. If this question were submitted to a jury in every case, the right of eminent domain would be of little practical value: Pittsburg, Fort Wayne, etc., Railway Co. v. Peet, 152 Pa. 488; Phila. v. Ward, 174 Pa. 45; Hamilton v. Pittsburg, Bessemer & Lake Erie R. R. Co., 194 Pa. 1.

In this case as in all others it is not the appellees, but the

state, through them that is exercising the right of eminent domain: Lance's App., 55 Pa. 16.

Believing then that the power of eminent domain is given by the state to individuals in a case like this as fully and completely as it is to railroad corporations, we assert that the powers of the jury are limited to two inquiries, viz:

1. Will the appellees, if permitted to exercise that power, do so in such a manner as to subserve the public interest? And

2. What damages if any will be done to intervening lands? Harvey v. Thomas, 10 Watts, 63; Harvey v. Lloyd, 3 Pa. 331; Shoenberger v. Mulhollan, 8 Pa. 134; Hays v. Risher, 32 Pa. 169; Horner & Roberts' Lateral Railroad, 37 Pa. 333; Brown v. Peterson, 40 Pa. 373; Brown v. Corey, 43 Pa. 495; Keeling v. Griffin, 56 Pa. 305; Hays v. Briggs, 74 Pa. 373.

The general rule in estimating the damage resulting from the appropriation of part of a tract of land is to make a fair and just comparison of the market value of the whole tract, before the taking, and afterwards as affected by it. The difference is the measure of damages: Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411; Watson v. Pittsburg, etc., R. R. Co., 37 Pa. 469; Pittsburg, etc., Ry. Co. v. McCloskey, 110 Pa. 436; Setzler v. Penna. Schuylkill Valley R. R. Co., 112 Pa. 56; P. W. & B. R. R. Co. v. Trimble, 4 Wh. 47; Harvey v. Lackawanna, etc., R. R. Co., 47 Pa. 428; Hornstein v. Atlantic, etc., R. R. Co., 51 Pa. 87; D., L. & W. R. R. Co. v. Burson, 61 Pa. 369; East Brandywine, etc., R. R. Co. v. Ranck, 78 Pa. 454; Penna. etc., R. R. Canal Co. v. Bunnell, 81 Pa. 414; Reading & Pottsville R. R. Co. v. Balthaser, 119 Pa. 472; Harris v. Schuylkill, etc., R. R. Co., 141 Pa. 242; Miller v. Windsor Water Co., 148 Pa. 429; Baird v. Schuylkill River East Side R. R. Co., 154 Pa. 459; Spring City Gas Light Co. v. Penna. Schuylkill Valley R. R. Co., 167 Pa. 6.

In order that two properties having no physical connection may be regarded as one, in the assessment of damages for right of way, they must be so inseparably connected in the use to which they are applied that the injury or destruction of one must necessarily and permanently injure the other: Gibson v. Fifth Ave., etc., Bridge Co., 192 Pa. 55; Potts v. Penna. Schuylkill Valley R. R. Co., 119 Pa. 278; Rudolph v. Penna. Schuylkill Valley R. R. Co., 186 Pa. 541.

We submit that the cases of Ehret v. Schuylkill River East
Side R. R. Co., 151 Pa. 158, Pittsburg, etc., R. R. Co. v.
Vance, 115 Pa. 327, and Kersey v. Schuylkill River East Side
R. R. Co., 133 Pa. 234, cited by appellant, have either been
scrupulously followed by the court below, or have no applica-
tion to the present case, under its peculiar facts.

OPINION BY MR. JUSTICE MESTREZAT, February 25, 1901 :

This case was most carefully tried by the court below, and
every point raised by the learned counsel was not only consid-
ered and determined, but elaborately discussed by the court.
The charge was exceptionally clear and comprehensive, and re-
viewed at length all the questions arising in the case. The
investigation of these questions by the court as well as by the
learned counsel was painstaking and exhaustive, and none of
the many cases on the subject in this court escaped their atten-
tion and consideration. In his answer to the points for charge
submitted by the plaintiff, as well as in the charge itself, the
trial judge followed the law as enunciated in the numerous
cases on the subject decided by this court. We are satisfied
with the result of the trial ; and the elaborate discussion of the
questions by the learned judge, being in line with our own dici-
sions, relieves us of the necessity of referring specifically to the
assignments of error.

The necessity for the lateral railroad on the route selected
by the petitioner was a question for the jury under proper in-
structions by the court. The nature and character of the ne-
cessity contemplated by the statutory provisions in order to
enable the petitioner to secure the benefit of the legislation was
correctly and fully explained to the jury. This was done not only
in the general charge, but also in answer to the points for charge.
The plaintiff's contention, however, is that in submitting the
question of the necessity for the road to the jury, the court
erred in holding that they could not take into consideration
that a better, cheaper and more convenient route might have
been selected. But this position is clearly untenable. The
Act of May 5, 1832, P. L. 501, Purd. 1816, and its supplements,
require the petitioner or petitioners for a lateral railroad to
"survey and mark such route as he or they shall think proper
to adopt;" and thereupon the viewers, and subsequently on

appeal, the court and jury shall determine the necessity for the road, and the damages sustained by the owner of the intervening lands by its construction and use.  This undoubtedly excludes from the consideration of the viewers and the jury, any other route as bearing on the necessity of the location adopted by the petitioner.  There may be a better and less expensive route; but that is a matter entirely with the petitioner and not with the landowner, and cannot avail the latter in the determination of the necessity for the selected route.  The learned counsel for the plaintiff concede that the ruling of the court below on this branch of the case is in harmony with the law as laid down by this court in Hays v. Risher, 32 Pa. 169, but they deny the soundness of that decision.  The argument of the learned counsel, however, has not convinced us that the reasoning of the court is unsound as alleged ; on the contrary, we think it logical, and the conclusion fully warranted by a fair interpretation of the statute.

Under the pleadings and evidence in the case, we are not convinced that the learned court erred in its rulings on the question of damages.  The statement avers that the plaintiff is the owner in fee of a large tract of land over which the proposed railroad will pass for a distance of 250 rods; that a considerable portion of the land is underlaid with the Connellsville vein of coking coal, of especial value to the plaintiff company, which is engaged in mining and operating the same from several large works in the vicinity thereof; that the surface of the land is of good quality and productive; that a certain portion of it is especially adapted as a site for a reservoir for the collection and storage of water, and has been utilized for that purpose by the plaintiff.  In the general charge the court called the attention of the jury to the manner in which the plaintiff claimed that its property would be changed and affected by the location and construction of the proposed road; that it was essential that they consider all the elements of depreciation, and then determine " whether or not the property, as a whole, has been depreciated in the market."  The learned judge directed the jury's attention to the reservoir, its present and prospective use and value to the plaintiff, and the alleged curtailment of its capacity, and thereby the depreciation of the value of the land by the construction of the road on the plaintiff's property.

He also called attention to the alleged pollution of the water flowing into the reservoir, by the construction of the road, as an element of damage to be considered by the jury. The interference in the mode of using the land for mining purposes, the cost of fencing and the division of the land, were likewise adverted to as proper elements of damage. In short, the charge required the jury, in ascertaining the damage sustained by the plaintiff, to consider everything that injuriously affected the plaintiff's property.

It will thus be observed that the trial judge's instructions followed the well established rules in cases of this character that the measure of damages was the difference in the market value of the whole property immediately before and after the construction of the road as affected thereby. The land declared in the statement to be affected is " a large tract of land . . . . traversed by the proposed road." It seems that prior to its present ownership, this land was divided into two separate farms owned by different parties. The court below, however, very properly treated them as one tract in the hands of the plaintiff in assessing the damages occasioned by the construction of the defendant's road. The contention of the plaintiff is that the benefits and damages should have been considered not upon this property only, but upon this and other property of the plaintiff, together known as the Mammoth plant. It is alleged that the plaintiff's testimony shows that damages were claimed because of the injury to the Mammoth plant in its entirety and that such was the proper rule to be observed in assessing the damages in this case. The trial judge however rejected this view because it was not supported by the pleadings, and the trial had proceeded upon the theory that the damages were to be assessed for the land formerly known as the two tracts. We cannot say that this was error. The statement does not show that the land claimed to be injured is connected with or a part of the Mammoth plant. The averment that the coal under the tract is mined and operated from works in the vicinity of the tract, and that the reservoir is the only available supply for several large works of the plaintiff, does not show that it has any connection with the Mammoth plant.

The questions raised by the assignments of error having been satisfactorily disposed of in detail by the court below, we need

not discuss them further. We are of opinion that the appellant has failed to convict the court below of error, and the assignments are therefore overruled, and the judgment is affirmed.