---

BYRNES et al. v. DOUGLASS et al.[1]

(Circuit Court of Appeals, Ninth Circuit. October 4, 1897.)

No. 284.

1. MINES AND MINING—EMINENT DOMAIN—CONDEMNATION OF TUNNEL.
Under the Nevada statute of March 1, 1875 (Gen. St. §§ 256–273), authorizing the condemnation of rights of way for mining tunnels, a mining company may condemn, for use in reaching its mine, an old and partially ruined tunnel in a neighboring claim, which is not used by the owners of that claim at the time, there being nothing to show any present purpose to use it.

2. SAME—COMPENSATION—COMMISSIONER'S REPORT.
The report of commissioners in condemnation proceedings under the Nevada statute, finding on conflicting evidence that no damage will be done by the construction of a tunnel through certain claims, and that such claims would rather be benefited thereby, will not be disturbed on appeal.

[1] Rehearing pending.

Appeal from the Circuit Court of the United States for the District of Nevada.

A proceeding was commenced by J. M. Douglass and others, the appellees in this case, in the district court of the state of Nevada, under a statute of that state entitled "An act to encourage the mining, milling, smelting, or other reduction of ores in the state of Nevada," approved March 1, 1875 (St. 1875, p. 111; Gen. St. §§ 256–273), to condemn a right of way for a mining tunnel 7½ feet wide by 7½ feet high from the mine known as the "Contact Mine," through five intervening mining claims and locations, namely, the Atlantic, the Annie, the Red Jacket, the South End, and the Clinton, to the Goodman mine. The appellants removed the cause to the circuit court of the United States for the district of Nevada, and under said proceedings in said circuit court commissioners were appointed to assess damages to the owners of the property appropriated to the use of said tunnel, and upon the report of said commissioners and the hearing of the objections of the appellants thereto the court confirmed the report, and entered and filed a decree appropriating to the use of the appellees the right of way through said mines, as applied for in the petition. The appellants appealed from said decree, and assign as error, first, that in and by said proceeding there was condemned to the use of the appellees a tunnel 648 feet in length, running through a portion of the Atlantic Consolidated mine, and having its mouth in the Contact mine, which tunnel belonged to and was a part of the Atlantic Consolidated mine, and was the most convenient means for working the same, and had been for many years used by the owners of the Atlantic Consolidated mine, and was not subject to condemnation under said act of the legislature of Nevada, for the reason that no authority is given by said act to condemn the tunnel of one person, constructed and used for mining purposes, for the use of another for the same purpose. The facts in regard to the tunnel which belonged to the Atlantic mining claim are these: The commissioners, in surveying a tunnel through the mining claims intervening between the Contact claim and the Goodman claim, followed and appropriated for a portion of the distance the tunnel so referred to in the assignment of error. A portion of that tunnel had been constructed in 1860 or 1861, for the purpose of furnishing water to Silver City. Subsequently its use for that purpose was abandoned, and as early as 1866 it was used for prospecting and working the Atlantic claim. It traversed the Atlantic claim, and had its mouth on an adjoining claim, which was first known as the "Cadiz Claim." The Cadiz claim and the Atlantic claim belonged originally to the same owners. They permitted the Cadiz location to revert to the United States, and it was subsequently relocated by others. In 1890 it was relocated by C. E. Brown, under the name of the "Contact Mine." The tunnel was used for mining purposes as late as the year 1877, or perhaps 1881. After that date no work appears to have been done in the tunnel, except to this extent: that in 1887, the tunnel being out of repair, an agent who was in possession of the Atlantic mine and tunnel on behalf of the owners began to repair the tunnel, but shortly afterwards, on consultation with the owners, appears to have abandoned it, for the reason that it was more feasible to construct a new tunnel than to repair the old. In 1887 he commenced the construction of a new tunnel. Since that date the old tunnel was not used, but was allowed to fall into decay. In their report the commissioners in these proceedings awarded to the owners of the tunnel, so far as the same was situate in the Atlantic mine, to wit, 349 feet, the sum of $1,021.95.

W. E. F. Deal, for appellants.

F. M. Huffaker, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

It is the contention of the appellants that, under the act of the legislature of Nevada on which the proceedings in this case were had, the

circuit court was powerless to take the tunnel belonging to the owners of one mine, and bestow it by right of eminent domain upon the owners of another. It appears from the evidence that when the appellees took possession of the right of way under the proceedings in this case the old tunnel was badly caved down, and in very bad shape, and that it cost nearly as much to clean it out as it would have cost to run a new tunnel. The statute under which these proceedings are had declares that "the production and reduction of ores are of vital necessity to the people of this state; are pursuits in which all are interested, and from which all derive a benefit; so the mining, milling, smelting, or other reduction of ores are hereby declared to be for the public use, and the right of eminent domain may be exercised therefor." Gen. St. Nev. § 256. In Mining Co. v. Seawell, 11 Nev. 394, it was held by the supreme court of that state that the condemnation of a right of way for a tunnel for the operation of a mine under the provisions of the statute in question was constitutional, and that the purpose for which the tunnel was to be appropriated was a public use. That decision was approved in the later case of Mining Co. v. Corcoran, 15 Nev. 147, and it undoubtedly declares the settled law of that state. Under the facts that appear in the record, and that were acted upon by the court in rendering the decree which is appealed from, we deem it unnecessary to consider whether or not a mining tunnel which has been constructed and is in use by a mining corporation may, under the statute of Nevada, be taken from the company by which it is owned or used, and be devoted to the use of another mine. That question is not presented in this case. The tunnel of the Atlantic mine, which was appropriated by the appellees in those proceedings, had not been used for mining purposes for many years. It is true that it had not been abandoned, and that it still belonged to the Atlantic mine, and that the owners of that mine claimed it, and the right to use it; but the fact remains that they had not used it, and there was nothing in the record to show a present purpose to use it, for mining purposes. At the time when these proceedings were begun, therefore, it stood in the same relation to the property of the mining company in which any other of its property stood which was not being actually used for mining purposes. The right to condemn it by the exercise of eminent domain rested upon the principles which have controlled the decisions of courts in cases where the lands of railroad corporations, not actually in use by them, nor absolutely necessary for the enjoyment of their franchises, have been held subject to be taken by other corporations in the exercise of the right of eminent domain. Peoria, P. & J. R. Co. v. Peoria & S. R. Co., 66 Ill. 174; In re Rochester Water Com'rs, 66 N. Y. 413; New York, C. & H. R. R. Co. v. Metropolitan Gaslight Co., 63 N. Y. 326; Morris & E. R. Co. v. Central R. Co., 31 N. J. Law, 205. The commissioners in their report, and the court in its decree, evidently took this view of the relation of the old tunnel to the Atlantic mine.

The remaining assignments of error direct our attention to the fact that in the report of the commissioners and in the final decree no compensation whatever is allowed for that portion of the old tunnel which

was located in the Contact mine, and no compensation was allowed for the right of way through the mines which intervened between the Atlantic mine and the Goodman. The report of the commissioners was based upon conflicting testimony. Competent evidence was produced before them to prove that the old tunnel in the Contact mine and the right of way through the other mines were of no value, and that it was a benefit, rather than a disadvantage, to the intervening mines to develop their lodes by the tunnels which were cut through them, and that in all cases where ore of any value was taken it was placed upon the mining premises, and there left for the use of the owners. Under this state of the record, we cannot say that the fair and actual value of the property taken was not awarded, or that just compensation was not made. Every intendment is in favor of the correctness of the report of the commissioners. Railroad Co. v. Elliott, 5 Nev. 358. The decree will be affirmed, with costs to the appellees.