[No. 2139]

THE GOLDFIELD CONSOLIDATED MILLING AND TRANSPORTATION COMPANY (A CORPORATION), RESPONDENT, *v.* THE OLD SANDSTORM ANNEX GOLD MINING COMPANY (A CORPORATION), W. H. BROCK, E. S. JOHNSON, AND A. HUYSER, APPELLANTS.

[150 Pac. 313]

1. MOTIONS—DISMISSAL—TIME FOR DISMISSAL.

In a condemnation proceeding, defendant moved to set the proceeding down for hearing on the questions of whether the use to which the property was to be applied was one authorized by law and whether the taking of the property was necessary. The court evidently made an order setting the matter for hearing on January 21, and on that day defendants made an application to dismiss their former motion to set the matter for hearing. *Held*, that the court properly denied this application, as the motion to set the matter for hearing had been acted upon, and all that the court could have done would have been to vacate the order setting the matter for hearing, which it was not asked to do.

2. EMINENT DOMAIN — PROCEEDINGS TO TAKE LAND — HEARING — SPLITTING CAUSES.

In a proceeding to condemn certain patented mining claims upon which to deposit tailings from an ore mill, defendants moved to set the cause down for hearing on the questions of whether the use was one authorized by law, and whether the condemnation was necessary. On the hearing they objected to the court disposing of the further question whether the use to which the property was to be applied was a more necessary public use than that to which the land was already appropriated. *Held*, that this question was so interwoven with the other

two questions that the rule against splitting causes of action applied and the court properly determined such question.

3. EMINENT DOMAIN—PUBLIC USES—MINES AND MILLING.

Rev. Laws, sec. 2456, provides that mining for gold, silver, etc., and other valuable mineral, is the paramount interest of this state, and is hereby declared to be a public use. Section 2458 authorizes any citizen to enter upon private unfenced and unimproved land and prospect thereon for precious metals. Section 5606 provides that the right of eminent domain shall be exercised for the public uses therein specified including roads, railroads, etc., and dumping places to facilitate the milling, smelting, or other reduction of ores, or the working of mines, and for all mining purposes, outlets, natural or otherwise, for the deposit of tailings, etc., from mills, smelters, or other works for the reduction of ores. *Held*, that the use of land as a place upon which to deposit tailings from an ore mill is a public use and land may be condemned therefor.

4. ABANDONMENT—ELEMENTS—INTENT.

A company engaged in milling and reducing ores deposited tailings from ores purchased by it on its own land in a gulch, through which water at times flowed in great volume, making it necessary to dam up the tailings so that they would not be washed away. This damming process eventually forced the tailings on defendant's adjoining land. The tailings were valuable and could be re-treated profitably, and the company intended to re-treat them. In placing them on defendant's land it acted on legal advice, and there was testimony that it did not intend to abandon the tailings. *Held*, that the evidence warranted the conclusion that the company did not abandon the tailings so as to give defendants title thereto, since "abandonment" is the relinquishment of a right or the giving up of something to which a party is entitled, and, in determining whether one has abandoned his property or rights, the intention is the paramount object of inquiry.

5. EMINENT DOMAIN—ENTRY BEFORE CONDEMNATION—OWNERSHIP OF PROPERTY.

Where a corporation, invested with the power to condemn land as a place upon which to deposit tailings from its ore mill, placed such tailings upon the land of another without the owner's consent and subsequently instituted proceedings to condemn such land, the common-law rule that a structure erected by a tort-feasor becomes a part of the land did not apply.

6. EMINENT DOMAIN—NECESSITY OF CONDEMNATION—EVIDENCE.

In a proceeding to condemn land as a place for the deposit of tailings from an ore mill, evidence *held* to show that such land was necessary for that purpose.

7. EMINENT DOMAIN—NECESSITY OF CONDEMNATION.

An absolute necessity for the identical lands sought to be condemned is not necessary to authorize their condemnation.

8. EMINENT DOMAIN—NECESSITY OF CONDEMNATION.

That there were other lands further away available for the purpose did not prevent the condemnation of land as a place for the deposit of tailings from an ore mill, since it is the general rule that, when a corporation seeks to exercise the right of eminent domain, its discretion in the selection of land will not be questioned if it acts in good faith and not capriciously.

9. EMINENT DOMAIN—PROPERTY SUBJECT TO APPROPRIATION—PROPERTY PREVIOUSLY DEVOTED TO A PUBLIC USE.

Where property sought to be condemned as a place for the deposit of tailings from an ore mill, though located and patented as mining ground, had not been worked for several years, the mere possibility that it might be used in the future for mining purposes did not prevent condemnation, especially where the party seeking to condemn was willing that the order of condemnation should provide that defendants might carry on mining operations so far as such use of the land did not interfere with its operations, and it appeared likely that the tailings, after being re-treated, would be carried away by the flood waters and a large portion of the land thereby freed from such tailings.

10. EMINENT DOMAIN—TITLE OR RIGHTS ACQUIRED—STATUTORY PROVISIONS.

Rev. Laws, sec. 5607, provides that the estates and rights in land therein specified are subject to be taken for a public use, including a fee simple when taken for public buildings, etc., or for an outlet for a place for the deposit of débris or tailings of a mine, mill, smelter, or other place for the reduction of ores. *Held*, that only such an interest in land desired as a place for the deposit of tailings as is necessary can be taken, as the statute does not say that a fee simple shall be taken, but only that it is subject to be taken.

11. JURY—RIGHT TO JURY TRIAL—CONDEMNATION PROCEEDINGS.

In a proceeding to condemn land as a place for the keeping of tailings from an ore mill, defendants contended that tailings already placed on their lands were abandoned by plaintiff and had become their property, and that there was therefore no necessity for condemning the land as a place to store such tailings. *Held*, that defendants were not entitled to a jury trial on this question of ownership of the tailings, as it was an incident of the determination of the right of condemnation which was a question solely for the court.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Peter J. Somers*, Judge.

Condemnation proceeding by the Goldfield Consolidated Milling and Transportation Company against the Old Sandstorm Annex Gold Mining Company and others.

From an interlocutory order, the defendants appeal. **Affirmed.**

*D. H. Kehoe*, for Appellants:

Private property shall not be taken for public use without just compensation first having been made. (Sec. 8, art. 1, Const. Nev.; art. 5, U. S. Const.) The evidence shows very clearly that plaintiff never had any right or authority to take or use any part of the land of defendants. The legislative power does not extend to the taking or damaging of the private property of one person for the benefit of another. (*Sutter County* v. *Nichol*, 152 Cal. 668, 93 Pac. 872; *State* v. *Super. Ct.*, 78 Pac. 1011.) A subordinate agency can exercise the power of eminent domain only when it is expressly granted by the legislative authority. (*Weitzel* v. *Spokane I. Ry. Co.*, 117 Pac. 864, 116 Pac. 855.) The mill of respondent is a private enterprise, and does not come within the provision of the constitution which permits the taking of private property for public use. (*Con. Chan. Co.* v. *C. P. R. R. Co.*, 51 Cal. 269.)

Authority to condemn lands for public use must be found in positive law. (*Wash. Power Co.* v. *Waters*, 186 Fed. 572.) Eminent domain cannot be exercised unless by virtue of a statute expressly or impliedly conferring the power. (*San Joaquin Irr. Co.* v. *Stevenson*, 164 Cal. 221.)

Statutes delegating the right of eminent domain to corporations are to be strictly construed. (6 Am. & Eng. Ency. Law, 552; *S. V. W. W.* v. *San Mateo W. W.*, 64 Cal. 123, 28 Pac. 447; *Pather* v. *R. R. Co.*, 52 Ind. 16; *Railroad Co.* v. *Wilson*, 49 Cal. 396; *S. P. R. R. Co.* v. *Wilson*, 49 Cal. 396.) Where there is any doubt of the extent of the power, the land owner must have the benefit of the doubt. (15 Cyc. 567.) Statutes authorizing condemnation of private property for public use are not to be extended by inference or implication. (*Pather* v. *R. R. Co., supra.*)

The use for which property is desired must be such as will subserve the public in the sense that they shall have the right to demand the service of the corporation as of right. (*Shasta Power Co.* v. *Walker,* 149 Fed. 568, affirmed 160 Fed. 856.) Eminent domain cannot be exercised so as to enable one corporation to condemn the franchises and property of another for the same purpose. (4 Thomp. Corp., sec. 5620; 2 Kent's Com. 339.) Nor to enable a person to build a flume on the land of another, to carry off the tailings from his mine. (*Con. Chan. Co.* v. *R. R. Co.,* 51 Cal. 269; *Wulzen* v. *Board,* 101 Cal. 15; *Lorenz* v. *Jacobs,* 63 Cal., 73; *In Re Eureka Basin W. Co.,* 96 N. Y. 42; *Lindsay Irr. Co.* v. *Mertheus,* 97 Cal. 676.)

A corporation cannot condemn whatever it may find convenient and profitable to acquire, on the ground that it may save expense. (*Fenwick* v. *London Ry. Co.,* 64 Cal. 123–131, 28 Pac. 447.)

The complaint does not show any public necessity. (*Cummings* v. *Peters,* 56 Cal. 593.) To authorize the condemnation of any particular land by a company to which power has been delegated, a necessity must exist for the taking thereof for the use and purpose of the party instituting the proceedings. (15 Cyc. 632, 633, 634.) The fact that a statute authorizes the condemnation of land for a particular use, does not raise the presumption that such purpose is a public use. (*Healy Lumber Co.* v. *Morris,* 74 Pa. 681; *Amador Queen M. Co.* v. *Dewit,* 16 Pac. 74.)

A party cannot go upon the land of another without permission and construct a ditch or other obstructions without first executing the right of eminent domain. (*Emerson* v. *Eldorado Ditch Co.,* 18 Mont. 247, 44 Pac. 969; *Fitzpatrick* v. *Montgomery,* 50 Pac. 416; *Esmond* v. *Chew,* 15 Cal. 137; *Iron Co.* v. *Tucker,* 48 Ohio St. 41, 26 N. E. 630.) When respondent went upon the lands of appellants it was a trespasser. (*Robinson* v. *Southern Cal. Ry. Co.,* 61 Pac. 947; *Hull* v. *R. R. Co.,* 21 Nev. 371; *Ewing* v. *City,* 5 Wall. 413, 18 L. Ed. 657; *Potter* v. *Ames,* 43 Cal. 75; *Peterson* v. *Bean,* 61 Pac. 213.) Being a trespasser,

the tailings placed upon the land belong to the owners of the land. (*Van Size* v. *R. R. Co.*, 3 Hun, 463, 10 Am. Rep. 56.) Respondent never had right or authority to deposit tailings on the lands of defendants. (*Dower* v. *Richards*, 15 Pac. 105.)

The question of the title and ownership of the tailings on the land was not properly before the court, and the demand of appellants for a jury trial to pass upon the title to the tailings should have been granted. (*Kohl* v. *U. S.*, 91 U. S. 376, 23 L. Ed. 449; *Weston* v. *Charleston*, 2 Pet. 464, 7 L. Ed. 481; *Chicago, B. & Q. Ry. Co.* v. *Chicago*, 166 U. S. 226, 41 L. Ed. 979.)

*Hoyt, Gibbons & French* and *Benjamin J. Henley*, for Respondent:

The right of eminent domain has been delegated by the legislature for the purpose of mining and milling. (Rev. Laws, sec. 5606.) This section makes them a public use, and the right of eminent domain may be exercised in carrying them on. (*Highland Boy G. M. Co.* v. *Strickland*, 78 Pac. 296, 50 U. S. 581; Lewis on Eminent Domain, 3d ed. sec. 254, *et seq.*; *Dayton M. Co.* v. *Seawell*, 11 Nev. 394; *Overman S. M. Co.* v.· *Corcoran*, 15 Nev. 147; *Byrnes* v. *Douglass*, 83 Fed. 45; *Miocene Ditch Co.* v. *Jacobsen*, 146 Fed. 680; Lindley on Mines, 2d ed. sec. 254, *et seq.*)

The court had the power, without a jury, to determine the ownership of the tailings at the time of the hearing. (*City of Los Angeles* v. *Pomeroy*, 57 Pac. 585; *S. V. W. Wks.* v. *San Francisco*, 22 Cal. 434; *Hooker* v. *Los Angeles*, 47 U. S. 487; *Beaulieu Vineyard* v. *Superior Court*, 91 Pac. 1015; *Pinney* v. *Borough of Winsted*, 66 Atl. 337.) The constitutional right of jury trial does not relate to suits in equity and special proceedings. (*Lake* v. *Tolles*, 8 Nev. 290; *Crosier* v. *McLaughlin*, 1 Nev. 353; *Van Fleet* v. *Olin*, 4 Nev. 95.) A condemnation proceeding is not one according to the course of the common law, but is a special proceeding. (15 Cyc. 806; *Spencer Creek W. Co.* v. *Vallejo*, 48 Cal. 70; *Kennebec Water Dist.* v. *Waterville*, 52 Atl. 774;

*Ingram* v. *Maine W. Co.*, 57 Atl. 893; *Tripp* v. *Overocker*, 1 Pac. 695.)

Respondent is the owner of the tailings which have been deposited upon the lands of the appellants. To constitute an abandonment there must be a concurrence of intent to abandon and decisive act of the party. (1 Cyc. 5; *Middle Ditch Creek Co.* v. *Henry*, 39 Pac. 1058; *Ritter* v. *Lynch*, 123 Fed. 935; *St. John* v. *Kidd*, 26 Cal. 271; *Mallett* v. *Mining Co.*, 1 Nev. 168; *Barnett* v. *Dickinson*, 48 Atl. 840; *Worsham* v. *State*, 120 S. W. 443; *Hawke* v. *Wentworth*, 39 Pac. 809.) Even if the tailings were not personal property, they would still remain the property of plaintiff. (15 Cyc. 763; *Oregon R. & N. Co.* v. *Mosier*, 13 Pac. 300; *Searl* v. *School Dist.*, 33 U. S. 740; *Calumet River Ry. Co.* v. *Brown*, 26 N. E. 501; *Illinois Cent. R. Co.* v. *Le Blanc*, 21 South. 760; *Railway Co.* v. *Strand*, 46 Pac. 238; Sutherland on Damages, vol. 4, p. 3153; *Cal. P. R. R. Co.* v. *Armstrong*, 46 Cal. 85; Barringer & Adams on Mines, 608, *et seq.; Ritter* v. *Lynch*, 123 Fed. 930.)

The use of the land is necessary for the further deposit of tailings by respondent. (Lewis on Eminent Domain, 2d ed. sec. 601; 15 Cyc. 633; *Overman S. M. Co.* v. *Corcoran*, 15 Nev. 156; *State* v. *Superior Court*, 87 Pac. 739; *Central Pacific Ry. Co.* v. *Feldman*, 92 Pac. 849; *O'Hara* v. *Chicago M. & N. R. Co.*, 28 N. E. 923; *Kansay City Ry. Co.* v. *Vicksburg Co.*, 21 South. 155; 51 South. 714; *S. V. W. W.* v. *Drinkhouse*, 28 Pac. 681; *Postal T. & T. Co.* v. *Oregon S. L. R. Co.*, 65 Pac. 729.)

Although the land sought to be condemned is owned and held as a mining claim, it has not been shown that it is now being used for mining purposes. It is not therefore appropriated to a public use, and the use to which it is sought to be appropriated is a more necessary public use. (*Spanish River Boom Co.* v. *Union Boom Co.*, 73 Pac. 672; *Byrnes* v. *Douglass*, 83 Fed. 45, 59 Fed. 29; Lewis on Eminent Domain, sec. 440; *Postal T. & T. Co.* v. *Oregon S. L. R. Co.*, 65 Pac. 671; *St. Louis Ry. Co.* v. *Hannibal Depot Co.*, 28 S. W. 485; *S. Pacific Ry. Co.* v.

*So. Cal. Ry. Co.*, 43 Pac. 602; *Gold* v. *Railway Co.*, 53 N. E. 285.)

By the Court, COLEMAN, J.:

Respondent instituted proceedings in the district court of Esmeralda County to condemn portions of certain patented mining claims belonging to appellants. From an order of the court made upon the hearing of certain preliminary questions, an appeal has been taken.

The respondent alleges in its complaint that it is organized for the purpose of milling, and reducing by other methods, gold, silver and other ores, and that it now is, and for a long time past has been, engaged in the carrying on of the said business of milling and reducing ores; that the said respondent is authorized by the laws of the State of Nevada to condemn, for use in the carrying on of its business, the rights sought to be condemned; that in the operation of said mill there are discharged therefrom large quantities of pulverized rock and earth, commonly known as "tailings," without the discharge of which it is impossible to operate the said mill, and that said tailings are valuable and are being conserved by respondent for re-treatment; that, in the continued operation of the said mill, all of the lands owned by the respondent and accessible for their deposit became covered with the said tailings, and that it became necessary for the respondent to enter upon and use the lands of other persons for the deposit and storage of said tailings; that large quantities of said tailings are deposited upon the lands described in the complaint, within retaining dams erected by the respondent for their conservation, and that it is necessary to its business that the respondent be given the right by condemnation to use the surface of said lands as a storage place for the said tailings, and as a place for the disposal, treatment, and reduction thereof; that the use to which respondent seeks to put the surface of the said land is a more necessary use than the use to which the said surface of the land is now

appropriated. The respondent alleges that it is not desirous of harassing the appellants or interfering with their mining operations, and offers, in the event an order of condemnation is entered in the action, that such order may provide that appellants may enter upon the premises and conduct mining operations, with due regard to the preservation and protection of the tailings of the respondent.

The answer of the appellants admits their ownership of the lands in issue, and denies most of the material allegations of the complaint, denies that there is any necessity for the condemnation, and alleges that the tailings which have been deposited upon the lands by the respondent were abandoned by the respondent and are now the property of appellants.

Section 5614, Revised Laws, provides for the determining by the court or judge, "before condemnation," of three questions, viz:

(1) Is the use to which the property is to be applied a use authorized by law?

(2) Is the taking of the property sought to be condemned necessary to such use?

(3) If the land is already appropriated to a public use, is the use to which it is sought to apply it a more necessary public use?

[1] After the issues in the case had been formed, counsel for appellants served notice upon respondent that he would on December 6 apply to the court to set down for hearing by the court questions 1 and 2, above stated. While the record is silent as to the order made on that day, it is evident that the court made an order setting the matter for hearing on January 21, for at that time counsel for appellants made an application to dismiss his motion of December 6 to set the matter for hearing, and upon objection thereto it was denied, and the court proceeded to hear the preliminary questions in the proceeding.

We do not think appellants could have dismissed their

motion. The motion had served its purpose. The court had acted upon it. All that could have been done would have been for the court to have vacated its order setting the matter for hearing, which the court was not asked to do.

[2] Objection was made to the disposal of question 3 by the court, since it was not included in the notice to set it for hearing, and the overruling of the objection is assigned as error. Under the circumstances of this case, the three questions disposed of are so interwoven as to enable the court to dispose of them all upon substantially the same evidence. When the court announced its intention of disposing of question 3 at the same time as the other questions, appellants could have moved for a continuance if they deemed further time necessary. But since no continuance was requested, and particularly in view of the fact that substantially the same evidence was necessary to enable the court to pass upon all three questions, we are unable to see how appellants could possibly have been prejudiced. Why should not the court dispose of all of the matters at one time? The determination of any one of these questions against respondent would necessarily have terminated the proceedings and obviated the necessity of taking testimony as to damages. It seems to us that the reason for the rule against splitting causes of action applies with equal force in this situation.

"The principle which prevents the splitting up of causes of action, and forbids double vexation for the same thing, is a rule of justice, and not to be classed among technicalities." (*Dutton* v. *Shaw*, 35 Mich. 431.)

It has been held to be the better practice to hear the preliminary matters first. (*Balto. & O. R. Co.* v. *P. W. & Ky. R. Co.*, 17 W. Va. 847.)

[3] In determining if the use to which respondent seeks to put the land sought to be condemned is one authorized by law, it is necessary to consider the policy of the state toward the mining and milling of precious

metals.    And right here it may be said that mining will become a "lost art" unless the ores produced from the mines can be economically reduced, for mining is dependent upon the facilities for treating the ore economically.

By section 1, article 10, of the constitution of Nevada, as originally adopted, the mines of the state were exempt from taxation.    While this section has been amended so as to permit the assessing for the purpose of taxation of all patented mining claims, still every patented mining claim upon which $100 worth of work is done annually is exempt from taxation.    (Stats. 1913, c. 83, p. 106.)    The very purpose of the change was to stimulate mining.

Section 2456, Revised Laws, reads:

"* * * Mining for gold, silver, copper, lead, cinnabar, and other valuable mineral, is the paramount interest of this state, and is hereby declared to be a public use."

Section 2458, Revised Laws, provides that any citizen of the United States may enter upon any unfenced and unimproved land (except mining claims) held in private ownership, and prospect thereon for various precious metals.

Section 5606, Revised Laws, provides, *inter alia*, that:

"The right of eminent domain shall be exercised in behalf of the following public uses: * * * (6) Roads, railroads, tramways, tunnels, ditches, flumes, pipes, and dumping places to facilitate the milling, smelting, or other reduction of ores, or the working of mines, and for all mining purposes; outlets, natural or otherwise, for the deposit or conduct of tailings. * * *"

Can there be any doubt as to the policy of the state toward the mining and milling industry of the state? And who can doubt the wisdom of this policy, when we stop to consider the prevailing conditions in the state?

The language of the Supreme Court of the United States, in *Clark* v. *Nash*, 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1087, 4 Ann. Cas. 1171, is applicable to the case at bar.    It is there said:

"In some states, probably in most of them, the proposition contended for by the plaintiffs in error would

be sound.   But whether a statute of a state permitting
condemnation by an individual for the purpose of obtain-
ing water for his land or for mining should be held to be
a condemnation for a public use, and therefore a valid
enactment, may depend upon a number of considerations
relating to the situation of the state and its possibilities
for land cultivation, or the successful prosecution of its
mining or other industries.   Where the use is asserted to
be public, and the right of the individual to condemn land
for the purpose of exercising such use is founded upon
or is the result of some peculiar condition of the soil or
climate, or other peculiarity of the state, where the right
of condemnation is asserted under a state statute, we are
always, where it can fairly be done, strongly inclined to
hold with the state courts, when they uphold a state
statute providing for such condemnation.   The validity
for such statutes may sometimes depend upon many
different facts, the existence of which would make a
public use, even by an individual, where, in the absence
of such facts, the use would clearly be private.   Those
facts must be general, notorious, and acknowledged in
the state, and the state courts may be assumed to be
exceptionally familiar with them.   They are not the sub-
ject of judicial investigation as to their existence, but
the local courts know and appreciate them.   They under-
stand the situation which led to the demand for the
enactment of the statute, and they also appreciate the
results upon the growth and prosperity of the state,
which, in all probability, would flow from a denial of its
validity.   These are matters which might properly be held
to have a material bearing upon the question whether the
individual use proposed might not in fact be a public one.
It is not alone the fact that the land is arid and that it
will bear crops if irrigated, or that the water is necessary
for the purpose of working a mine, that is material;
other facts might exist which are also material, such as
the particular manner in which the irrigation is carried
on or proposed, or how the mining is to be done in a par-
ticular place where water is needed for that purpose.

The general situation and amount of the arid land, or of
the mines themselves, might also be material, and what
proportion of the water each owner should be entitled to;
also, the extent of the population living in the surround-
ing country, and whether each owner of lands or mines
could be, in fact, furnished with the necessary water
in any other way than by the condemnation in his own
behalf, and not by a company, for his use and that of
others."

Public use is in every case a matter of local policy.
(15 Cyc. 581; *Madera R. Co.* v. *Raymond G. Co.*, 3 Cal.
App. 668, 87 Pac. 27; *Highland Boy G. M. Co.* v. *Strickley*,
28 Utah, 215, 78 Pac. 296, 1 L. R. A. n. s. 976, 107 Am. St.
Rep. 711, 3 Ann. Cas. 1110.)

The Supreme Court of Utah, in the case of *Highland
Boy Gold Mining Co.* v. *Strickley*, 28 Utah, 215, 78 Pac.
296, 1 L. R. A. n. s. 976, 107 Am. St. Rep. 711, 3 Ann. Cas.
1110, passed upon a statute which, in so far as it is
material to the case at bar, is identical with the Nevada
statute.   The court said:

"It being conceded, and this court having held, that
the construction and operation of irrigating ditches in
this state is a public use (*Nash* v. *Clark*, 27 Utah, 158,
75 Pac. 371, 1 L. R. A. n. s. 208, 101 Am. St. Rep. 953, 1
Ann. Cas. 300, *supra*), it follows that the construction of
roads and tramways for the development of the mining
industry is a public use, as the same line of reasoning
that applies in support of the doctrine in the one case
holds good in the other.   Otherwise a party owning a
few acres of farming land, or only a few square rods for
that matter, could invoke the law of eminent domain, and
by condemnation proceedings acquire a right of way
across his neighbor's land for an irrigation ditch to
convey water to his small holdings; whereas, the owners
of mines and of works for the reduction of ores, the
operations of which furnish thousands of men in this
state with employment at good wages, and to which the
general prosperity of the state is largely due, would be

denied the right to invoke this same rule of law in order
to acquire, when necessary to the successful operation of
their business, rights of way for the transportation of
ores from the mines to the mills and smelters, and for
the construction of tunnels for drainage and other pur-
poses. And parties holding the title to ground necessary
and suitable for these purposes, which, in many cases,
except for such purposes, might be entirely worthless,
would be clothed with power to demand and compel pay-
ment of an unconscionable price for their lands before
parting with the title, or they could refuse, absolutely, to
grant the easement required on any terms, and thereby
in some cases cripple mining enterprises, or destroy them
altogether. Such a policy would not only be inconsistent
and unreasonable, but would greatly retard the develop-
ment of one of the greatest natural resources of the
state. We are therefore of the opinion, and so hold, that
the construction and operation of roads and tramways for
the development and working of mines is a public use.
The act of the legislature under consideration makes
ample provision for the payment of a fair price to the
owner for lands sought to be condemned, and for all
damages that he may suffer because of such taking, and
is therefore valid."

That case was taken to the Supreme Court of the
United States, by which tribunal the judgment was
affirmed in *Strickley* v. *Highland Boy Gold Mining Co.*,
200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas.
1174.

Substantially the same question here involved has been
passed upon by this court in two cases, the opinion in
both cases having been written by Mr. Justice Hawley.
The question was so ably discussed by that eminent
jurist that it seems to us a bare reference to them should
suffice. (*Dayton M. Co.* v. *Seawell*, 11 Nev. 394; *Overman
S. M. Co.* v. *Corcoran*, 15 Nev. 147.)

See, also, *Byrnes* v. *Douglass*, 83 Fed. 45, 27 C. C. A.
399; Lewis on Eminent Domain, 3d ed. sec. 275, *et seq.;*

*Miocene Ditch Co.* v. *Jacobsen,* 146 Fed. 680, 77 C. C. A. 106; *Butte A. & P. Ry. Co.* v. *Mont. U. Ry. Co.*, 16 Mont. 504, 41 Pac. 233, 31 L. R. A. 298, 50 Am. St. Rep. 508.

It is true that the statute under consideration in the Nevada cases cited has been repealed, but the logic of those cases is applicable to the statute now in existence in the state.

[4] We now come to the question as to whether or not the surface rights sought to be condemned are necessary to the carrying on by respondent of its operations. In considering this question, the lower court found it necessary to determine also the question of the ownership of the tailings deposited thereon. It appears from the evidence that respondent, after treating the ores which it had purchased, deposited the tailings upon a portion of its own land which lies in a gulch, through which water flows at times in great volume and with great force. It also appears from the evidence that it was necessary for respondent to keep a man employed at all times to dam up the tailings so that they would not wash away and be lost, and as a consequence of this damming process the tailings eventually were forced upon the land of appellants. It also appears that these tailings are valuable and can be re-treated profitably. Respondent seeks to re-treat these tailings, and to do so finds it necessary to erect a tram to convey them to its mill. Appellants claim that they are now the owners of the tailings. Having purchased the ores from which the tailings came, respondent was the owner of them at the time they were deposited upon the lands of appellants. There are certain well-known methods of parting with title to property (32 Cyc. 680), and the only way in which appellants claim that respondent parted with the title to the tailings was by abandonment. The rule as to what constitutes abandonment has been declared by this court in *Mallett* v. *Uncle Sam M. Co.*, 1 Nev. 188, 90 Am. Dec. 484, as follows:

" 'Abandonment' is a word which has acquired a technical meaning, and there can be no reason why a different signification should be given to it when applied to the

loss of right to a mining claim than that which it has received in the books.    It is defined to be 'the relinquishment of a right, the giving up of something to which we are entitled.'    In determining whether one has abandoned his property or rights, the intention is the first and paramount object of inquiry; for there can be no strict abandonment of property without the intention to do so. Thus differing from the loss of right by forfeiture under mining laws, or by the failure to use and occupy where no such laws govern, and in this, too, that abandonment may be complete the very instant the miner leaves his claim, for time is not an essential element of abandonment.    The moment the intention to abandon and the relinquishment of possession unite, the abandonment is complete.    But lapse of time may often be a strong circumstance, when connected with others, to prove the intention to abandon, though the bare lapse of time, short of the statute of limitations and unconnected with any other circumstance, would be no evidence of abandonment—though the right might be lost, as before stated."

There can be no question but that the foregoing quotation correctly states the law.    (1 Cyc. 5; *Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1058; *Ritter* v. *Lynch*, 123 Fed. 936; *St. John* v. *Kidd*, 26 Cal. 271; *Richardson* v. *McNulty*, 24 Cal. 345; *Judson* v. *Malloy*, 40 Cal. 309; *Barnett* v. *Dickinson*, 93 Md. 258, 48 Atl. 840; *Worsham* v. *State*, 56 Tex. Cr. R. 253, 120 S. W. 443, 18 Ann. Cas. 134; *Hawke* v. *Wentworth*, 4 Ariz. 317, 39 Pac. 809.)

The trial court, in its written decision, after declaring the law to be as above stated, found that there had been no abandonment.    Before respondent began to deposit its tailings upon the ground of appellants, it sought legal advice, and made the deposit accordingly.    It conserved the tailings by having a man on hand to keep a dam built up so as to prevent their being washed away, which it is not likely it would have done had it intended abandoning them.    The testimony was to the effect that

respondent did not intend to abandon the tailings. We think the conclusion of the trial court, to the effect that respondent did not abandon the tailings, is warranted by the evidence.

[5] Being, then, the owner of the tailings, has not respondent a right to condemn the land in question for the purpose of erecting its tram thereon to reconvey them to its mill?

"Where a corporation invested with the power of eminent domain enters upon land without the consent of the owner, express or implied, and places improvements thereon, and subsequently institutes proceedings to condemn the same land, the common-law rule that a structure erected by a tort-feasor becomes a part of the land does not apply, and the owner is not entitled to the value of the improvements thus wrongfully erected." (15 Cyc. 763.)

See, also, *Oregon Ry. & N. Co.* v. *Moiser*, 14 Or. 519, 13 Pac. 300, 58 Am. Rep. 321; 5 Am. & Eng. Ency. 567; *Searl* v. *School Dist. No. 2*, 133 U. S. 553, 10 Sup. Ct. 374, 33 L. Ed. 740; *Chase* v. *School Dist. No. 10*, 8 Utah, 231, 30 Pac. 757, 16 L. R. A. 805; *Cal. P. R. R. Co.* v. *Armstrong*, 46 Cal. 85; *International Bridge & T. Co.* v. *McLane*, 8 Tex. Civ. App. 665, 28 S. W. 455; *Seattle & M. R. Co.* v. *Corbett*, 22 Wash. 189, 60 Pac. 127; *Calumet River Ry. Co.* v. *Brown*, 136 Ill. 322, 26 N. E. 501, 12 L. R. A. 84; *Illinois Cent. R. Co.* v. *Le Blanc*, 74 Miss. 650, 21 South. 760; *Bellingham Bay & B. C. R. Co.* v. *Strand*, 14 Wash. 144, 44 Pac. 140, 46 Pac. 238; *Greve, et al.*, v. *First Div. St. P. & P. R. Co.*, 26 Minn. 66, 1 N. W. 819; *Newgass* v. *St. Louis, A. & T. R. Co.*, 54 Ark. 140, 15 S. W. 188; *Jacksonville T. & K. W. Ry. Co.* v. *Adams*, 28 Fla. 631, 10 South. 465, 14 L. R. A. 533; *Denver & R. G. Ry. Co.* v. *Stancliff*, 4 Utah, 177, 7 Pac. 530.

Does not this rule apply to the situation under consideration? Our statute (Rev. Laws, sec. 5606) expressly declares that the right of eminent domain may be exercised in behalf of certain "public uses," and among them

"dumping places to facilitate the milling  *   *   *  of ores  *   *   *" and "for the deposit or conduct of tailings." Taking the view we do, that the use to which it is sought to apply the land is one authorized by law, and that respondent is invested with the power of eminent domain, it logically follows that the rule laid down by Cyc. is controlling in this case.

[6] The witness Burch, who was called in behalf of respondent, testified that respondent owned about as much land below the level of its retaining dam as was then covered by its tailings, but that it needed that land for the deposit of the tailings now upon the ground after they are re-treated. And while this witness also testified that respondent owned 300 or 400 acres of land in the vicinity of the place where the tailings now are, and upon which no tailings are deposited, he also testified: "We have covered practically all (the land) that is available for tailings," and that the land alluded to (the 300 or 400 acres) was too high to run the tailings upon. Aside from Mr. Burch, respondent called another witness, who was a mill man of years of practical experience and technical training, and both of these witnesses gave their expert opinion that the ground sought to be condemned was necessary to the carrying on of the operations of the mill by the respondents, opposed to whom was a witness who had had no such technical or practical experience.

[7] The rule as to what is "necessary" in condemnation proceedings was clearly stated by this court in the case of *Overman S. M. Co.* v. *Corcoran*, 15 Nev. 147, where it is said:

"Individuals, by securing a title to the barren lands adjacent to the mines, mills, or works, have it within their power, by unreasonably refusing to part with their lands for a just and fair compensation, which capital is always willing to give without litigation, to greatly embarrass, if not entirely defeat, the business of mining in such localities, and confirms the opinion there advanced

that 'the mineral wealth of this state ought not to be left undeveloped for the want of any quantity of land actually necessary to enable the owner or owners of mines to conduct and carry on the business of mining.' The law does not contemplate that an 'absolute necessity' should exist for the identical lands sought to be condemned. The selection of any site for the purposes specified must necessarily, to some extent, be arbitrary. * * * Upon a review of all the facts, it appears to our satisfaction that the appropriation of these lands to respondent's use will be of great benefit and advantage to the mining industry of Storey County; that it is necessary to condemn such lands for the protection and advancement of said interests; and that the benefits arising therefrom are of paramount importance as compared with the individual loss or inconvenience to appellants. This brings the case within the provisions of the statute, and shows that a necessity exists for the exercise of the law of eminent domain."

This rule is sustained by the great weight of authority: 15 Cyc. 633; *State* v. *Superior Court,* 44 Wash. 476, 87 Pac. 521; *State* v. *Superior Court,* 46 Wash. 516, 90 Pac. 663; *Spring Valley Co.* v. *Drinkhouse,* 92 Cal. 528, 28 Pac. 682; *Butte Ry. Co.* v. *Mont. U. Ry. Co.,* 16 Mont. 504, 41 Pac. 233, 31 L. R. A. 298, 50 Am. St. Rep. 508; *Samish River Boom Co.* v. *Union Boom Co.,* 32 Wash. 586, 73 Pac. 670; *K. C. Ry. Co.* v. *Vicksburg Ry. Co.,* 49 La. Ann. 29, 21 South. 144, affirmed in *Louisiana & A. Ry. Co.* v. *Louisiana Ry. & Nav. Co.,* 125 La. 756, 51 South. 712; *State* v. *Superior Court,* 64 Wash. 189, 116 Pac. 855.

It is intimated that since the tailings now upon the ground are only about ten feet deep, and since the outlet of the mill is sixty feet higher than the ground of the respondent which is covered by the tailings, there is no need for additional ground, as the tailings to be produced in the future can be deposited upon these tailings now upon the ground. Mr. Burch, the man of technical training and experience, testified that it would be easier mechanically to handle the tailings if not spread out so

much, but that when spread out and exposed to the oxygen of the air for a time they could be re-treated to greater advantage. But, aside from the advantage of having the tailings at no greater depth than ten feet, the uncontradicted testimony is to the effect that the uniform grade from the mill to the furtherest end of the dam is about one-third of an inch to the foot, so it will be seen that it is not practicable to deposit the tailings much deeper.

[8] The contention that the land cannot be condemned because there are other lands farther away that are available for the purpose sought is of no force, as was shown in the case of *Overman S. M. Co.* v. *Corcoran, supra,* where it is said:

"In the matter of the petition of the N. Y. & H. R. R. Co., the court, in discussing this question, said: 'It is claimed that there are other lands in the vicinity, equally well adapted to the use of the applicant as those sought to be acquired by these proceedings, and which, possibly, might be acquired by purchase from the owners. But such objections to these proceedings are untenable. The location of the buildings of the company is within the discretion of the managers, and courts cannot supervise it. The legislature has committed to the discretion of the corporation the selection of lands for its uses, and if the necessity of lands for such purposes is shown, and the lands sought are suitable, the courts cannot control the exercise of the discretion, or direct which of the several plats of ground shall be taken. If the taking of one plat of ground in preference to another could be shown to work great mischief, and result in great loss, which could be prevented by taking another, and the proceeding to take one parcel compulsorily, in preference to another equally well adapted to the uses of the company, is from some unworthy or malicious motive, and not in the interest of the public, the court might entertain the question, and in the exercise of a sound discretion withold its consent to the appropriation. But in this case there are good reasons, resulting from the present

occupation of and the expensive improvements put upon these premises by the appellant, why they should be taken if suitable and proper for the purposes required, the owners not claiming that they will sustain any special injury peculiar to themselves, which would not be sustained by the owners of adjacent lands, if taken.' (46 N. Y. 553.) To the same effect, see *Boston & Albany R. R. Co.*, 53 N. Y. 576."

It is the general rule that, when a corporation seeks to exercise the right of eminent domain, its discretion in the selection of land for its use will not be questioned where it acts in good faith and not capriciously. (15 Cyc. 634; 10 Am. & Eng. Ency. Law, 2d ed. p. 1057, citing cases; *Postal Tel. & T. Co.* v. *Oregon S. L. R. Co.*, 23 Utah, 474, 65 Pac. 739, 90 Am. St. Rep. 705; *Samish River Boom Co.* v. *Union Boom Co., supra*; *Frick Coke Co.* v. *Painter*, 198 Pa. 468, 48 Atl. 302.)

If such were not the rule, the same defense could be made with regard to any lands plaintiff might seek to condemn. We are clearly of the opinion that a necessity was shown by respondent for the condemnation of the land.

[9] It is also contended that the property sought to be condemned was devoted to a public use (mining), and therefore could not be taken by another for the same or a kindred use. The evidence shows that, while the property was located and patented as mining ground, it was not in fact being worked, and had not been worked for several years. The mere possibility that the land may some time in the future be used by appellants for mining purposes will not prevent condemnation. (*Byrnes* v. *Douglass*, 83 Fed. 45, 27 C. C. A. 401; *Balto. & O. Ry.* v. *P. W. & Ky. R. Co.*, 17 W. Va. 847; *Samish River Boom Co.* v. *Union Boom Co.*, 32 Wash. 586, 73 Pac. 673; *Butte R. Co.* v. *Mont. U. R. Co.*, 16 Mont. 504, 41 Pac. 245, 31 L. R. A. 298, 50 Am. St. Rep. 508; *Colo. E. R. Co.* v. *U. P. R. R. Co.*, 41 Fed. 301; *So. Pac. R. Co.* v. *So. Cal. R. Co.*, 111 Cal. 221, 43 Pac. 604.)

See, also, *St. L., H. & K. Ry. Co.* v. *Hannibal U. D. Co.*, 125 Mo. 82, 28 S. W. 483.

While the fee to land may be acquired in certain cases under condemnation proceedings, the respondent does not seek in this case more than the privilege of occupying the surface of the land to such an extent only as is necessary to the carrying on of its operations, and is willing that appellants may use the surface for the carrying on·of mining operations, in so far as such use does not interfere with respondent's operations; and since it is the purpose of respondent not to restrain the tailings after they shall have been re-treated, but to permit them to be carried away by the flood waters which come from time to time, it is very likely that before a great while a large portion of the land sought to be condemned will be free from tailings.

[10] Section 5607, Revised Laws, relating to the estate which may be taken, is as follows:

"The following is a classification of the estates and rights in lands subject to be taken for public use: (1) A fee simple.   *   *   *"

It does not say that a fee simple shall be taken, but that it is "subject" to be taken.   Under such statutes, only such an interest as is necessary can be taken.   (Lewis on Eminent Domain, 3d ed. sec. 450; *Newton* v. *City of Newton*, 188 Mass. 226, 74 N. E. 346; *Neitzel* v. *Spokane I. Ry. Co.*, 65 Wash. 100, 117 Pac. 864, 36 L. R. A. n. s. 522; *Tyler* v. *Town of Hudson*, 147 Mass. 609, 18 N. E. 582; *Kellogg* v. *Malin*, 50 Mo. 496, 11 Am. Rep. 426; *Heyneman* v. *Blake*, 19 Cal. 595. )

[11] It is contended that appellants were entitled to a jury upon the question of ownership of the tailings.   The determination of the ownership of the tailings was an incident of the determination of the right of condemnation, which was a question solely for the court.

From the views expressed, it necessarily follows that the judgment appealed from should be affirmed, and it is so ordered.

NORCROSS, C. J.: I concur.

MCCARRAN, J.: I concur in the order.