STATE OF NEVADA, Ex Rel. THE STANDARD SLAG COMPANY, a Corporation, Relator, *v.* THE FIFTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Nye, HON. WILLIAM D. HATTON, Judge Thereof, and BASIC REFRACTORIES INCORPORATED, a Corporation, Respondents.

No. 3402

December 3, 1943.                    143 P.(2d) 467.

*Charles M. Merrill, John E. Robinson,* and *Walter Rowson,* all of Reno, for Relator.

*H. R. Cooke, M. A. Diskin,* and *Thatcher & Woodburn,* all of Reno, for Respondents.

## OPINION

By the Court, ORR, C. J.:

■ On October 2, 1943, relator petitioned this court for a writ of prohibition, and on October 9, 1943, the matter was argued and submitted to the court for decision. Prior to its submission counsel for the respective parties stipulated that the matter be heard before two of the justices of this court. It was further stipulated that upon a decision being reached an order be entered, and a written opinion filed later. On the 13th day of October 1943 this court made its order denying the writ.

The petition presents for consideration a new situation insofar as the exercise of eminent domain as it relates to the mining industry is concerned. It is well established in this state that mining, being a paramount industry, is a public use, and the power of eminent domain can be exercised in the furtherance of the development of mines and the extraction and reduction

of ores contained therein. We need not now be concerned with the constitutionality of the statutes relating thereto and the intent and purpose thereof. This purpose and the liberality with which the statutes should be construed have been defined and established in the following cases: Dayton Gold & Silver Min. Co. v. Seawell, 11 Nev. 394; Overman S. M. Co. v. Corcoran, 15 Nev. 147; Goldfield Consol. v. Old Sandstorm Annex, 38 Nev. 426, 150 P. 313; Schrader v. Third Judicial Dist. Court, 58 Nev. 188, 73 P. 2d 493; Douglas v. Byrnes, C. C., 59 F. 29; Nevada Consol. Copper Co. v. Consolidated Coppermines Co., D. C., 44 F. 2d 192, at page 197.

The law of this state granting the right to exercise the right of eminent domain in mining operations being well settled, determined and construed in most respects, as evidenced by the holdings in the cases cited supra, had the application of respondent corporation in the district court asked for condemnation for the purpose of building a road, erecting a tramway or running a tunnel in order to facilitate the working of its mines, the action would have been clearly within the jurisdiction of that court to determine. However, as is quite often the case, new situations require new constructions, and it is the new method of "open-pit" mining which now engages our attention.

In order that an idea may be had as to the privilege desired by respondent corporation and which it seeks to enforce by eminent domain, it is deemed advisable to give a brief summary of the allegations of the complaint. The complaint alleges that the plaintiff in the trial court, respondent here, is presently engaged and has since the 14th day of December 1936 been engaged in the mining and development of mining claims known as the Gloria group, situated in Nye County, Nevada, and in the course of its mining operations has developed a large body of brucite ore upon three of the claims. That for a number of years brucite ores have been mined from this area by means of what is commonly known as

"open-pit" mining, and that method of mining is alleged to be the most economical and expeditious means of mining the character of ore contained in said claims. That in such operations it is necessary to remove large amounts of overburden and waste material which overlie the valuable brucite deposits; that such operation is commonly known as "stripping." That in the open-pit operation as the pit is deepened it is necessary that it be widened and its exterior perimeter extended by carrying outward and back the benches, spirals and switchbacks, so as to maintain proper slopes of the banks within the pit. That in said method the ore is blasted and the ore, as well as waste material, loaded on trucks with power shovels and moved by means of said trucks over the roads which are maintained upon benches within the pit. That the benches are sometimes called "levels," and are designated in numerical order from the upper perimeter of the pit down to its bottom. That the plaintiff and respondent has worked three benches, which are designated as No. 5790, No. 5730 and No. 5690, these numbers referring to the elevation of the benches above sea level. That each of the benches extends in a semicircular shape, and when completed will be almost circular. That underlying the area embraced within the said pit plan from elevation 5850 down to sea level elevation 5500 are approximately 200,000 tons of valuable brucite ore which will be mined under that plan of operations when the same has been constructed and completed down to said sea level elevation 5500. That the Bluestone lode mining claim owned by the relator is adjacent to the mining claims being mined by respondent, and respondent alleges that in order to mine said brucite within said claims by the open-pit mining it is necessary that the respondent extend the perimeter of its pit and its proposed benches into, to and across a certain part and portion of said Bluestone claim, and that the extension of said pit across said Bluestone claim would require the removal from said Bluestone claim of approximately eighty

thousand tons of material. That said operations across the Bluestone claim will increase the recoverable brucite ore contained in the claims belonging to respondent by approximately 42,000 tons. That mining by such crossing of said Bluestone claim will be more practical, economical and expeditious and prevent unnecessary delays in the extraction of the ore bodies, and further result in the saving of some ninety-seven cents per ton, or approximately $105,900.

■ We now have this question: may the right of eminent domain be exercised for the uses alleged in the complaint? We think that right, if given at all, must be found in paragraph 6 of section 9153 N. C. L. Relator insists that we give the provisions of that section a strict construction in accordance with what is claimed to be the general rule. The rule in this state is otherwise and is as stated in Douglass v. Byrnes, supra, wherein the court, in referring to the construction to be placed on the statute then in existence, said [59 F. 32]: "A reasonable, fair, just, broad, and liberal view should be taken by the court in interpreting its provisions." Judge Norcross, in the case of Nevada Consolidated Copper Co. v. Consolidated Coppermines Co., supra, approves such a construction. And it may be safely asserted that such is the holding of each of the Nevada cases passing upon that question. The supreme court of Utah has also favored the liberal construction of the Utah statutes relative to the exercise of eminent domain in relation to the mining industry. In the case of Monetaire Mining Co. v. Columbus Rexall Consol. Mines Co., 53 Utah 413, 174 P. 172, at page 175, the court said: "We think it is generally agreed that where the right of eminent domain is granted for a particular purpose, then the statute must be given a liberal construction in furtherance of such purpose." See, also, Utah Copper Co. v. Stephen Hayes Estate, 83 Utah 545, 31 P. 2d 624, at page 627.

Proceeding to a construction of the provisions of paragraph 6 of said section 9153 N. C. L., with the idea in

mind that it should be given a broad and liberal construction so that its evident purpose and the reason for its enactment may be given full effect, it seems evident that to confine the exercise of the right of eminent domain to the specific purposes mentioned in said section would be contrary to the clear purpose of the legislature in enacting it. The over-all purpose of the legislature in furthering the mining industry of the state was to provide ample opportunity for the economical and expeditious extraction of the ores contained in the mining claims located therein. It cannot reasonably be said that in attempting to effectuate such purpose the opportunity and necessity for the extraction of ore in the operation of mines should be restricted to a few enumerated instances in which the right to exercise eminent domain could be invoked. It seems more reasonable to believe that the legislature, having a broader purpose in mind and having enumerated certain instances, realized that other conditions very probably could and would arise, and in order to take care of conditions which could not at the time be foreseen, the general clause "for all mining purposes" contained in the section was inserted. No other reason is apparent for the inclusion of such a clause; the language permitting the exercise of eminent domain for the specific purposes mentioned was sufficient without that statement.

Relator contends that "open-pit" mining, being of comparatively recent origin, the legislature at the time of the enactment of section 9153 N. C. L., could not have had that method of mining in contemplation; that the law-making power has not, in this respect, bridged the time lag between new developments and resultant needed legislation. In 1937 an amendment was added to section 9153, being section 9153, vol. 2, 1931–1941 N. C. L. Supplement, p. 1232. It is significant that although "open-pit" mining was then quite universally understood, no change was made in paragraph 6 of said section 9153. We take this to be evidence of the fact that the legislature considered the provisions of the

eminent domain statute sufficiently broad to cover such a situation.

██ We conclude that the phrase "all mining purposes" enlarges the meaning of the statute beyond the specific purposes therein mentioned, and is broad enough to cover mining activities prosecuted by the "open-pit" method. Such being the case, authority to condemn in order to facilitate and expedite extraction of ore by means of the "open-pit" method is within the purview and purpose of the statute and, further, falls within the announced public policy of the state. The district court has jurisdiction in a proper case to determine the question of whether or not ground belonging to one mine owner should be subjected to mining operations carried on by another mine owner under the open-pit method. The placing of such a construction upon the provisions of paragraph 6 of section 9153 N. C. L. forces the conclusion that the writ in this case should be denied.

Other reasons advanced by petitioner for the issuance of the writ, such as whether or not the ground now owned by relator is being put to the same use as that to which respondent seeks to subject it; whether or not if permission is given respondent to go upon the Bluestone claim and construct the benches and laterals as desired it will ruin that portion of the claim and prevent future mining thereof by the relator; whether or not by so doing ores belonging to the owner will be removed therefrom by respondent and stock-piled and will deteriorate in value by reason of oxidization; and like matters presented in the petition, are all for the consideration and determination of the trial court, acting within its jurisdiction.

██ The contention that relator has been denied due process of law because of the shortness of time given it to prepare for a hearing of the motion for immediate possession is without merit. The procedure adopted by the respondent court in this matter is authorized by statute and the statutory provisions have been complied with. If the shortening of time would prevent relator

from making proper preparation, then an application to the court for a continuance should have been made. This court will indulge the presumption that the lower court would do its duty and allow such time as would be reasonably necessary. At least, if such a motion had been made and denied, relator would be in a better position to urge the point here. In this connection we should further say, in order to explain relator's position, that it is asserted by relator that no appeal lies from the order shortening time, and that on the motion for immediate possession it would be necessary to try the entire case, because if the motion were granted, respondent, with the machinery and organization that it has, could complete the work of enlarging the perimeter and building its levels and roads within a period of two weeks. But this is anticipating the action of the trial court. This court's position must be that ample opportunity would be afforded relator to be heard, and the trial court, contrary to relator's fears, will not "condemn before it hears."

The order heretofore entered denying the writ of prohibition will stand, and it is hereby affirmed.

TABER, J., concurs.

DUCKER, J., did not participate.