STATE OF NEVADA EX REL. MILCHEM INCORPORATED, A CORPORATON, AND TONY MILLER, PETITIONERS, v. THE THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF LANDER; HONORABLE JOHN F. SEXTON, JUDGE THEREOF, AND WILLIAM ROBERTS, WILLIAM LAURITZEN, AND LYMAN THOMAS, RESPONDENTS.

Nos. 5467 and 5483

September 20, 1968 445 P.2d 148

[Rehearing denied November 12, 1968]

*Cooke & Roberts* and *George G. Holden,* of Reno, for Petitioner Milchem Incorporated.

*Harry B. Swanson* and *Richard E. Fray,* of Reno, for Petitioner Tony Miller.

*Gordon W. Rice* and *Leo P. Bergin,* of Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

Respondents Roberts, Lauritzen, and Thomas commenced an eminent domain action under NRS 516.010–516.060

against the petitioners. Petitioner Milchem Incorporated is the present owner of the property. Petitioner Miller is one of Milchem's predecessors of title.

These respondents filed a notice of location in 1963 for certain minerals on Miller's land. Later that year a certificate of location was recorded for another claim on the land. One year later the respondents filed their only proof of annual labor. In late 1966, after Milchem acquired title, another certificate of location was recorded.

Respondents have actually occupied and mined a certain lode in an open pit on a portion of the property since 1963. On November 16, 1966, they were advised by petitioner Milchem to cease such work and remove their property from the land. Respondents refused and instead went to court, filed the condemnation action, and obtained a temporary restraining order preventing petitioner Milchem from interfering with or obstructing respondents' possession, mining, or use of the property.

On January 6, 1967, Milchem filed a motion to dismiss respondents' action. In March 1967 Milchem filed a motion for a preliminary injunction to require the respondents to cease mining operations and yield possession to petitioner Milchem. Petitioner Miller also filed a motion to dismiss respondents' action. Miller also counterclaimed for damages against the respondents. Petitioners' motions were denied. Respondents have continued to remove the ore from the land. Petitioners claim that they have no plain, speedy, or adequate remedy in the ordinary course of law, and therefore filed in this court the present petition for an alternative writ of prohibition. Petitioners are asking this court to command the lower court to desist and refrain from any further proceedings in the eminent domain action below.

1. Respondents' claim that prohibition is not an appropriate remedy is without merit. In Bell v. First Judicial Dist. Court, 28 Nev. 280, 294, 81 P. 875, 876 (1905), this court said:

"It appears from the petition herein that petitioners applied to the lower court for relief, and that the questions herein presented were urged upon that court upon motions to quash and to dismiss the proceedings. If the proceedings in the lower court would be void because of the unconstitutionality of the sections of the act under which it is instituted, I think it is a case for the proper interference of this court by prohibition, unless it appear that there is another plain, speedy, and adequate remedy." See also Mitchell v. District Court, 82 Nev. 377, 418 P.2d 994 (1966).

When the motions to dismiss and the motion for a preliminary injunction were denied by the lower court after a presentation of the arguments herein urged, the petitioners were left with no other plain, speedy, and adequate remedy. Their claim is that the statute upon which respondents seek to act is unconstitutional. The respondents are in possession of the property and are able to mine the limited supply of minerals. They are thus able virtually to destroy the mining value of the land. Petitioners have no assurance that they will ever be adequately compensated for any damage done to their land. The slow process of appeal would not provide an adequate remedy under such circumstances. Prohibition is a proper remedy.

2. Respondents have moved to dismiss this proceeding upon the ground that Milchem has pursued another and inconsistent remedy by commencing an action to quiet title to the property. Respondents claim that petitioners, Milchem and Miller, have thereby waived their right to prosecute this proceeding.

Much of the authority cited by the respondents is not in point in that it contemplates an appeal from a judgment of the lower court and a subsequent attempt by an appellant to pursue an inconsistent remedy. In the present case there has been no judgment below; indeed, that is what the petitioners are trying to prevent. This is an original proceeding to obtain a permanent alternative writ of prohibition.

The statute of limitations on a potential claim of adverse possession by the respondents ran its 5 years on March 21, 1968. Petitioners claim that the quiet-title action was filed on February 15, 1968, as a cautionary measure to prevent the respondents from claiming 5 years of continuous adverse possession. This is a reasonable explanation which has its basis in law. Knoke v. Swan, 42 P.2d 1019 (Cal. 1935).

The petitioners should not be forced to give up either their right to protect themselves against the allegedly unconstitutional actions of the lower court or the potential claim of adverse possession by the respondents. The petitioners' right to protect themselves in such a fashion is an exception to the general rule of waiver by pursuit of an inconsistent remedy. Smith v. Patton, 241 S.W. 109 (Com.App.Tex. 1922).

Under these facts, petitioner Milchem's quiet-title action cannot be considered so inconsistent as to constitute a clear

and unmistakable voluntary waiver of petitioners' right to proceed. Basic Refractories, Inc. v. Bright, 71 Nev. 248, 286 P.2d 747 (1955).

3. We now reach the merits. The statute[1] under which respondents' original action was brought is apparently unique to Nevada. In essence, it seeks to encourage the development

---

[1] "516.010 Mining declared a public use. Mining for gold, silver, copper, lead, cinnabar and other valuable mineral is the paramount interest of this state, and is hereby declared to be a public use.

"516.030 Citizens may prospect on unfenced, unimproved land held in private ownership. Any citizen of the United States may enter upon any unfenced and unimproved land in the State of Nevada held in private ownership, excepting mining claims and mining property already located or occupied for mining purposes, and may prospect thereon for gold, silver or other valuable minerals or metals, being responsible to the owner of the land for all damage done thereon.

"516.040 Location of mineral ledge, deposit on unfenced, unimproved land held in private ownership; acquisition of title to land by special proceedings. Any citizen of the United States discovering a ledge or deposit containing gold, silver or other valuable mineral or metals in or upon any unfenced and unimproved land in this state held in private ownership, except mining claims or mining property already located or occupied for mining purposes, may locate such ledge or deposit in accordance with the laws of the United States and of this state in respect to the location of mining claims, the same as though such ledge or deposit was found upon the public domain, and may acquire title to such land so located by means of the special proceedings prescribed in NRS 516.030 to 516.060, inclusive.

"516.050 Procedure for acquiring title to land.

"1. The special proceedings shall be substantially as provided in this section.

"2. There shall be filed in the clerk's office of the district court in the county where the real property is situated a petition verified according to law. The petition shall state:

"(a) The names of the person or persons presenting the petition.

"(b) That he or they have discovered a ledge or deposit containing gold, silver or some other valuable mineral or metal.

"(c) The description by metes and bounds, or by some other accurate designation, of the tract or tracts of land located in the manner of mining claims as provided in NRS 516.030 to 516.060, inclusive, and desired to be appropriated for mining purposes.

"(d) That the land is more valuable for mining purposes than the purpose for which the same is being held.

"(e) The names of those in possession of the land, and those claiming any right, title or interest therein, so far as the same can be obtained by reasonable diligence.

"3. The proceedings following the filing of such petition shall be as prescribed in chapter 37 of NRS, insofar as the same are not inconsistent with the provisions of NRS 516.030 to 516.060, inclusive.

"4. If, upon the hearing of the petition filed as provided in this section, it appears to the satisfaction of the court or judge thereof that the land in question is more valuable for mining than for the purpose

of the mineral resources of the State by extending to certain lands held in private ownership the same rights to discover and exploit minerals which prevail upon the public domain under the federal mining laws. It also purports to protect the rights of the private owner by providing for an eminent domain proceeding to ascertain and compensate him for the value of any land taken. Petitioners' primary claim is that this eminent domain proceeding is unconstitutional in that it does not provide a just compensation (Nev. Const. art. 1, § 8) for the taking of private property. The exclusion of the value of the minerals contained in the land, pursuant to NRS 516.060, is the alleged unconstitutional defect.

When this statute was enacted, it was a common belief that the United States had retained mineral rights in large quantities of land to which it had issued patents. Most congressional acts which allowed for selection and patent of public lands contained restrictions which prevented the selection of lands which were known to be valuable for minerals. This applied to lands selected under the railroad grants and under the homestead laws. The enabling act which admitted Nevada as a State required it to consent to a reservation of minerals in favor of the United States as to all lands selected by the State. Since it was physically impossible to catalog and inventory all public lands selected for grant or entry to determine if they were valuable for minerals, the Secretary of the Interior normally included in early patents a reservation or exception of mineral rights or lands valuable for minerals. Similarly, patents issued by the State of Nevada normally contained a reservation of mineral rights or mines valuable for specified minerals in favor of the United States. Thus, when the Nevada statute was enacted, it was common belief the patentee of most lands (excluding mineral patents) owned only the surface rights and that the mineral rights were retained by the United States.

Respondents contend that the language "mineral land excluded" in the patent deed from the United States to the Central Pacific Railway Co., a predecessor in interest of the

for which the same is being used, then the petitioner or petitioners shall acquire title thereto in a manner similar to that prescribed in chapter 37 of NRS.

"516.060 Basis for determination of value of land. In determining the value of the land as a basis for the compensation which the petitioner or petitioners shall pay to the owners thereof, the minerals therein contained shall not be considered as going to make up the value, but the value which shall govern is the reasonable value of the land for the use to which the same has previously been put, or reasonably might be expected to be put in the future, by the owners thereof."

petitioners, precludes them from having any interest in the minerals in the land. It is clear, however, that this language means only that mineral lands known to be such at the time of the patent were not conveyed by the instrument. In Burke v. Southern Pac. R. R., 234 U.S. 669, 690 (1914), it was held that the Secretary of the Interior must determine at the time of issuing such a railroad grant patent which lands are to be excluded as mineral, and that such "determination of fact * * * will be considered as conclusive." See also Dredge Corp. v. Husite Co., 78 Nev. 69, 369 P.2d 676 (1962); Francoeur v. Newhouse, 40 F. 618 (C.C.N.D. Cal. 1889). Petitioner Milchem is the owner of the present mineral rights which were subsequently discovered to be in the land.

Ownership of minerals is a property right protected by the State and Federal Constitutions. United States v. 4.553 Acres of Land, 208 F.Supp. 127 (N.D. Cal. 1962); Idaho Maryland Mines Corp. v. United States, 104 F.Supp. 576 (Ct.Cl. 1952). The rights acquired by eminent domain are only those which are fully paid for. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922).

Where the mineral right is itself the interest sought to be condemned, it must be valued and paid for separately. State ex rel. State Highway Comm'n v. Foeller, 396 S.W.2d 714 (Mo. 1965); 4 Nichols, Eminent Domain § 13.22[2] at 422 (3d ed. 1962).

Condemned property can be taken "only after an ample and certain provision has been made for a just, full and adequate compensation * * *." Dayton Gold & Silver Mining Co. v. Seawell, 11 Nev. 394, 411 (1876).

As was stated in Board of Directors v. Morledge, 332 S.W.2d 822, 829 (Ark. 1960): "* * * the landowner is entitled to all the damages sustained because of the taking, and the Legislature has no power to specify a few items of damage and deprive the landowner of the other damages that he has sustained.

 * * * * * *

"We hold that the Legislature had the right to call the attention of the condemnor to these five elements of damage as particularly worthy of consideration; but that it was beyond the power of the Legislature to limit the landowner to these five elements of damage as mentioned in the two Acts. * * *.

548

The landowner is entitled to all the damages which may reasonably flow from the taking of his property; * * *."

The general rule is that, "Whatever is an essential element in that compensation cannot be excluded, even by legislative enactment. United States v. Rogers, 257 F. 397 * * *." City of Richmond v. Goodwyn, 112 S.E. 787, 789 (Va. 1922).

NRS 516.060 does not provide a means by which just compensation can be determined. The land here in question is virtually waste land and has little value apart from its mineral wealth. The reason Milchem, a mining company, bought the land was to exploit its future worth as a source of minerals. To allow this property to be taken from Milchem without paying it for the only attribute of value the land possesses would be grossly unfair.

None of the cases cited by respondents in support of the taking of property by eminent domain for mining purposes reaches this infirmity of NRS 516.060. They correctly hold that the determination that mining is a public use is within the power of the Legislature to make. State ex rel. Standard Slag Co. v. Fifth Judicial Dist. Court, 62 Nev. 113, 143 P.2d 467 (1943); Goldfield Consol. Milling & Transp. Co. v. Old Sandstorm Annex Gold Mining Co., 38 Nev. 426, 150 P. 313 (1915); Overman Silver Mining Co. v. Corcoran, 15 Nev. 147 (1880); Dayton Gold & Silver Mining Co. v. Seawell, supra. See also Urban Renewal Agency v. Iacometti, 79 Nev. 113, 379 P.2d 466 (1963); Berman v. Parker, 348 U.S. 26 (1954).

In the light of these cases and of the evident purpose of the statute, we find no constitutional infirmity in NRS 516.010–516.050, but we hold that NRS 516.060 is unconstitutional and therefore void. With respect to NRS 516.060, we would add to the holdings cited only the observation that one may not be deprived of his property without full compensation merely because he has chosen to let it lie dormant or perhaps was unaware of the value or the existence of the minerals. NRS 516.030 is no more drastic, considering the nature of the use to be established, than NRS 37.050, which permits prior entry to survey for public uses generally. NRS 516.040 must be read in the same light, as prescribing that any mineral found must be posted and the boundaries of the claim defined in the manner already familiar to prospectors under the mining laws. We caution, however, that a "location" under NRS 516.040 carries with it none of the possessory or extractive rights of a

mineral location on the public domain. If it did, NRS 516.040 would suffer from the same infirmity found in NRS 516.060. We therefore so construe it as to avoid unconstitutionality. State ex rel. Copeland v. Woodbury, 17 Nev. 337, 356, 30 P. 1006, 1012 (1883). The acquisition of rights, other than priority of right to bring an action under NRS 516.050, must await the proceedings under that section and be strictly in accordance therewith.

Because the record clearly shows that both the individual respondents and the district court have proceeded upon the theory that NRS 516.060 prescribed the court standard of valuation, and have failed even under that meager standard to accord petitioners their rights under NRS 516.050 as it adopts by reference the immediate entry provisions of chapter 37 of NRS, the writ should issue as prayed for.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.