[No. 9262-6-I. Division One. March 31, 1982.]

FRANK NELSON OAKS, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

*William L. Williams,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Kent Nakamura, Assistant,* for respondent.

CALLOW, J.—Frank Nelson Oaks appeals a superior court order affirming the Department of Licensing's revocation of his driver's license for failure to submit to a Breathalyzer test.

The issue presented is whether Oaks was "unconscious" within the meaning of RCW 46.20.308(2) despite his ability to walk, respond to questioning, and make decisions at the time of his arrest for drunk driving and request to submit to the Breathalyzer test. The section of the statute reads:

Any person who is dead, unconscious, or who is other-

wise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent provided by subsection (1) of this section and the test or tests may be administered, subject to the provisions of RCW 46.61.506.

RCW 46.20.308(2).

The appellant was stopped by a Kent city police officer on January 5, 1978. The officer observed the appellant make a sweeping left turn, strike a power pole, and continue driving in an erratic fashion. Upon contacting Oaks, the officer detected watery, bloodshot eyes and the strong odor of intoxicants. The appellant did not recall striking the power pole, and failed several field sobriety tests. Upon arrest, the appellant was advised of his constitutional and implied consent rights, RCW 46.20.308, and asked to submit to a Breathalyzer test. He declined to take the test and told the arresting officer that he would drive regardless of the revocation of his driver's license.

The Department of Licensing revoked Oaks' license for 6 months for failure to submit to the test. An administrative hearing affirmed the revocation and Oaks appealed to the superior court. At his trial, the appellant testified that he recalled stopping for dinner after work, having a few drinks, and going home to bed. He testified that he also took two sedatives, Meprobamate and Dalmane, to help him sleep. Retiring at 9 p.m., the appellant had no recollection of his actions until he awoke at the Kent City Jail 6 hours later. Evidence was presented as to the interactive effects of alcohol and the prescribed sedatives. The trial court held that Oaks was conscious and capable of making rational decisions, and affirmed the license revocation.

The appellant asserts that he had a substantially reduced perception and awareness at the time of the alleged refusal. He claims that the trial court erroneously concluded that "unconsciousness" requires a total lack of capacity or self–awareness. His position is that the ability to walk and talk is not conclusive of consciousness, especially when not recalled and that the refusal to take the Breathalyzer must

be made intelligently and knowingly, and the subject must be "conscious." The State's position is that the statute contemplates that only manifested physical unconsciousness excuses the failure to accede to a Breathalyzer test. The appellant was capable of refusing the test, did so, and cannot argue fine degrees of "consciousness" to excuse his action.

If a police officer has reasonable grounds to believe a driver is intoxicated, he may request that the driver submit to chemical testing of his blood or breath to determine the alcoholic content of his blood. All drivers are deemed to have consented to this testing; an individual who refuses to take the test after being informed that such refusal will result in the revocation of license will not be given the test, but will be subject to license revocation. RCW 46.20.308. Such consent is not withdrawn if the driver is "dead, unconscious, or . . . otherwise in a condition rendering him incapable of refusal." RCW 46.20.308(2). The driver's degree of intoxication, whether induced by alcohol, drugs, or a combination of both, is not a consideration in determining whether he is rendered incapable of refusing. *Department of Motor Vehicles v. McElwain,* 80 Wn.2d 624, 496 P.2d 963 (1972); *Junkley v. Department of Motor Vehicles,* 7 Wn. App. 827, 503 P.2d 752 (1972).

> [W]e fail to find anywhere in the statute an expressed intent that an operator who, while not unconscious, is yet too intoxicated to understand the advice given him and to respond intelligently to it, shall be excused from the penalty provided therein for refusal to comply with the request that he submit to a test.

*Department of Motor Vehicles v. McElwain, supra* at 628.

The defendant argues that his level of intoxication was so great as to render him "unconscious" within the meaning of the statute, notwithstanding his ability to walk, respond to questioning, and orally refuse to take the Breathalyzer test. He asserts that a significantly diminished level of awareness or self–perception can render a driver "unconscious," and does not require a total lack of self–awareness.

■■■ The statute does not define the term "unconscious." Absent evidence of a contrary legislative intent, words used in a statute but not defined are accorded their usual and ordinary meaning. Dictionary definitions may be resorted to if helpful in determining the ordinary meaning of a word. *Seattle–First Nat'l Bank v. Snell,* 29 Wn. App. 500, 629 P.2d 454 (1981). *Webster's Third New International Dictionary* 2486 (3d ed. 1969) defines "unconscious" as "not knowing or perceiving . . . free from self–awareness." Balancing this definition with the remaining two exceptions to the statute—death and other conditions rendering drivers incapable of refusal—it becomes plain that the statute contemplates excusing drivers from license revocation only when they are unable, for reasons other than intoxication, to exercise an intelligent judgment. *Junkley v. Department of Motor Vehicles, supra.* To be "unconscious" within the meaning of the statute, a motorist must manifest symptoms of such a lack of self–awareness or inability to perceive as to render him completely unable to exercise judgment. Physical incapacity, such as an inability to walk, talk or observe, is the strongest evidence. The present inability to recall the incident is weak evidence at best.

Here, the appellant was ambulatory and capable of carrying on an animated conversation with police officers. He was not unconscious, and was properly advised of the rights and warnings relative to the Breathalyzer test. As noted in *Department of Motor Vehicles v. McElwain, supra* at 628, the purpose of the statute is to provide the driver "the opportunity of exercising an intelligent judgment if *he is capable of doing so.*" (Italics ours.) The statutory reference is to an inability to withdraw consent. It does not prohibit revocation of the license when a defendant actually refuses the test.

The order of revocation is affirmed.

JAMES and SWANSON, JJ., concur.