THE STATE OF NEVADA, DEPARTMENT OF MOTOR
VEHICLES AND PUBLIC SAFETY, Appellant, *v.*
CLIFTON W. BROWN, Respondent.

No. 18409

October 24, 1988                                 762 P.2d 882

*Brian McKay,* Attorney General, Carson City; *Neil H. Friedman,* Deputy Attorney General, Las Vegas, for Appellant.

*Greenman, Goldberg & Raby,* Las Vegas; *Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Clifton Brown was arrested for driving under the influence of alcohol. When Brown was requested to take an evidentiary blood-alcohol test, pursuant to Nevada's implied consent law, he refused, and his driver's license was subsequently revoked for the statutory one-year period. As Brown later pleaded guilty, the one-year license revocation was added to the penalties imposed for his DUI conviction.

Brown appealed the revocation of his license to the DUI Adjudicator. The DUI Adjudicator affirmed the revocation, and

Brown appealed to the district court. Concluding that Brown's intoxicated condition rendered him incapable of withdrawing his consent, the district court reversed the decision of the DUI Adjudicator. This appeal by the State of Nevada, and the Nevada Department of Motor Vehicles and Public Safety followed. Because we conclude that as a matter of law a driver's voluntary intoxication, by itself, may not render him incapable of refusing to take an evidentiary test, we reverse the judgment of the district court.

## Discussion

Pursuant to NRS 484.383(1), any person driving a vehicle on a public road is deemed to have given consent to an evidentiary test for the purpose of determining the alcoholic content of his blood or the presence of a controlled substance. Nevada law, NRS 484.384(1) and NRS 484.385(1), further provides that failure to submit to an evidentiary test results in revocation of driving privileges for a minimum of one year. As the district court concluded that Brown's intoxicated condition rendered him incapable of withdrawing his consent, this case is controlled by NRS 484.383(3), which provided as follows:

> Any person who is dead, unconscious, or *otherwise in a condition rendering him incapable of refusal* shall be deemed not to have withdrawn his consent, and any such test may be administered whether or not the person is informed that his failure to submit to the test will result in the revocation of his privilege to drive a vehicle.

(Emphasis supplied.)

The sole issue on appeal is whether Brown's excessive, voluntary intoxication constitutes a "condition rendering him incapable of refusal" such that he "shall be deemed not to have withdrawn his consent." As this issue arises from ambiguity in NRS 484.383(3), resolution of this appeal is a matter of statutory construction.[1]

We believe that Brown's contention—that his voluntary intoxication allows him to escape the effect of Nevada's implied consent laws—is negated by the language of NRS 484.383(3), which

---

[1]We are mindful of Brown's argument that once he pleaded guilty to the offense of driving under the influence of intoxicating liquor the revocation of his license no longer served a purpose. Nevertheless, we do not find this argument persuasive. Although the implied consent statute is clearly intended to promote the enforcement of Nevada's DUI statute, the statutes are separate and distinct and, in the absence of any evidence of legislative intent to the contrary, should be enforced independently of one another. *Cf.* State v. Uehara, 721 P.2d 705 (Haw. 1986).

speaks of a person who is "dead, unconscious, or otherwise in a condition rendering him incapable of refusal." It is a well settled rule of statutory construction that where a general term in a statute follows specific words of a like nature, the general term takes its meaning from the specific words. *See, e.g.,* Young Elec. Sign Co. v. Erwin Elec. Co., 86 Nev. 822, 477 P.2d 864 (1970). Unconsciousness and death are clearly of a like nature; both terms denote a condition in which a person is unable either to comprehend or to respond to his environment in any significant manner. We must conclude, however, that voluntary intoxication, even when grossly excessive, cannot fairly be included in the same semantic category with unconsciousness and death. *See* Sweitzer v. Dep't of Transp., M.V.D., 683 P.2d 335 (Ariz.App. 1984).

Had the legislature intended that voluntary intoxication be a condition rendering a driver incapable of refusal, language to that effect could easily have been inserted in the statute. Clearly, there is no reference in NRS 484.383(3) to intoxication as a condition rendering a driver incapable of refusal, and we decline to create such a reference judicially where, for the most obvious of policy reasons, the legislature has chosen not to. *Cf.* State v. Pendley, 593 P.2d 755 (N.M.App. 1979); County of Natrona v. Casper Air Serv., 536 P.2d 142 (Wyo. 1975).

Finally, statutes must be given a reasonable construction with a view to promoting rather than defeating the legislative policy behind them. *See* NL Industries v. Eisenman Chemical Co., 98 Nev. 253, 645 P.2d 976 (1982). As we have previously expressed, the legislative policy behind Nevada's implied consent statute is to remove intoxicated drivers from Nevada's highways. *See* Galvan v. State, 98 Nev. 550, 655 P.2d 155 (1982). We believe that to allow a driver's culpability to decrease as his state of intoxication increases offends not only the legislative policy behind Nevada's implied consent statute but common sense as well. *Cf.* Gaunt v. Motor Vehicle Div., Dep't of Transp., 666 P.2d 524 (Ariz.App. 1983).

For the above reasons, we join the numerous jurisdictions that have interpreted statutory provisions similar to those in NRS 484.383(3) to preclude voluntary intoxication, by itself, as a condition rendering a driver incapable of refusal. *See e.g., Sweitzer,* 683 P.2d at 337; Bush v. Bright, 264 Cal.App. 2d 788, 71 Cal.Rptr. 123 (1968); State v. Uehara, 721 P.2d 705 (Haw. 1986); Oaks v. State, Dep't of Licensing, 645 P.2d 708 (Wash.App. 1982). Accordingly, we reverse the judgment of the district court and remand this matter with instructions to reinstate

the decision of the DUI Adjudicator affirming the revocation of Brown's driving privileges.[2]

---

[2]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.