GLENBROOK HOMEOWNERS ASSOCIATION, INC., a
Nevada Non-Profit Corporation, Appellant, v.
CHARLES PETTITT and DIANE PETTITT, Husband
and Wife, Respondents.

No. 26699

June 24, 1996                                   919 P.2d 1061

*Mark H. Gunderson,* Reno, for Appellant.

*Allison, MacKenzie, Hartman, Soumbeniotis & Russell* and
*Audrey P. Damonte,* Carson City, for Respondents.

## OPINION

*Per Curiam:*

Appellant Glenbrook Homeowners Association (GHOA) filed
an eminent domain action against respondents Charles and Diane

Pettitt (Pettitts) to condemn part of their land for construction of a roadway. The district court granted summary judgment for the Pettitts, concluding that GHOA did not have standing to condemn the property because traffic safety matters had been legislatively delegated to the Nevada Department of Transportation (NDOT). GHOA contends that it has power to condemn the land for construction of a roadway. We agree, and reverse the district court's decision and remand with instructions to enter summary judgment for GHOA.

## FACTS

GHOA is a non-profit corporation formed for the mutual benefit and protection of its members and to enforce the Declaration of Covenants, Conditions and Restrictions (CC&Rs) of the Glenbrook community. Under the CC&Rs, GHOA owns and is responsible for maintenance of the common areas and roads within the community. On February 2, 1978, the Pettitts purchased property from Glenbrook and constructed a home.

In 1991, responding to safety concerns, GHOA sought to widen the only byroad leading into the community. The redesign required the acquisition of a small strip of the Pettitts' property adjacent to the existing byroad. The Pettitts refused to sell the land, and on July 26, 1991, GHOA filed an eminent domain action against the Pettitts.

On September 22, 1994, the parties stipulated to the following facts:

(a) The property sought by GHOA in this action . . . is solely-owned by Pettitt.

(b) The existing entrance and roadway leading into the Glenbrook community is unsafe and dangerous for several reasons which include: (1) poor visibility for vehicles entering and exiting the community, (2) insufficient turning space for vehicles entering and exiting the community, (3) insufficient space for vehicles to stand while waiting to enter and exit the community, and (4) inadequate entrance and exit for fire safety.

(c) The aforementioned safety problems with the Glenbrook community's entrance and roadway could cause or contribute to the following occurrences: (1) motor vehicle accidents involving vehicles attempting to exit or enter the community, (2) motor vehicle accidents involving vehicles which are unable to easily turn into or out of the community, (3) motor vehicle accidents involving vehicles that are stopped while waiting to enter or exit the community, (4) inability of fire and other public safety vehicles to expeditiously enter or exit

the community and (5) inability of residents to expeditiously evacuate the community in the event of fire or other calamity.

(d) The proposed redesign of the entrance and roadway into the community is the most cost-effective way to attempt to cure and resolve the safety problems of the current design.

(e) The proposed redesign of the entrance and roadway into the community is the plan which is the least burdensome to the Pettitt property to cure and resolve the safety problems of the current design.

(f) The use of the property owned by Pettitt which is to be taken in the proposed redesign of the entrance and roadway commonly known as "Glenbrook Road" constitutes a "public use" as is described in NRS 37.040.

(g) The proposed redesign of the entrance and roadway into the community which involves a taking of the described property belonging to Pettitt is "necessary to the public use" as is described above and is contemplated in NRS 37.040.

(h) The property of Pettitt sought in the present action is not currently being used for any other "public use" as is described in NRS 37.040.

(i) GHOA shall file an affidavit of its appraiser, who is qualified, as to the value of the property to be taken. GHOA shall deposit the sum representing the value of the property within ten (10) days of the filing of the appraiser's affidavit. Should Pettitt not accept the value of the property to be taken based upon the affidavit of the appraiser, Pettitt may seek a hearing before the court on the sole issue of the value of the property to be taken within ten (10) days of the posting of value of the property by GHOA. The sole and only issue to be determined at any hearing will be the value of the property.

(j) Should the court determine the single legal issue of standing in favor of GHOA the court shall enter judgment in favor of GHOA reposing title to the property to be taken in GHOA and deliver the sum to be paid for the property taken to Pettitt.

On December 21, 1994, the district court granted the Pettitts' motion for summary judgment, determining that:

traffic safety matters have been delegated to, and should be left to the Nevada Department of Transportation ("NDOT"). Nothing in NRS chapter 37, or caselaw gives GHOA standing to supplant the existing function of a public agency. The finding of "a necessary public use" in traffic

safety matters regarding public roads in the State of Nevada should necessitate the involvement of NDOT.

## DISCUSSION

Summary judgment is appropriate when no genuine issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law. Perez v. Las Vegas Medical Ctr., 107 Nev. 1, 4, 805 P.2d 589, 590 (1991). Our review of a summary judgment is de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).

In the instant action, the operative facts are not in dispute. The case presents a first impression review of whether NRS 37.010(7) affords a private eminent domain action. NRS 37.010(7) provides: "Subject to provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public purposes: . . . (7) Byroads. Byroads leading from highways to residences and farms."

The Pettitts argue that to exercise eminent domain, an entity must be a specifically delegated condemnation authority. We disagree. NRS 37.070(2),[1] outlines the required contents of a condemnation complaint. The statute references the "person in charge of the public use for which the property is sought," thus contemplating that entities other than government agencies are authorized to condemn property, as long as the planned use constitutes a public use.

In the past, this court has addressed the "public purpose" for which the condemnation power is to be exercised, rather than the identity of the party exercising the power. In Dayton Gold & Silver Mining Co. v. Seawell, 11 Nev. 394 (1896), this court interpreted a former eminent domain statute. The central inquiry was whether the property was taken for public use. Once the public purpose was established, the power of the private company to condemn the property for that purpose was recognized, even though the statute did not expressly state that a private company was authorized to exercise such power.

In NL Industries v. Eisenman Chemical Co., 98 Nev. 253, 257, 645 P.2d 976, 979 (1982), although this court did not

---

[1] NRS 37.070 states in pertinent part:

The complaint must contain

1. The name of the court in which the action is commenced.

2. The name of the corporation, association, commission or person in charge of the public use for which the property is sought, who must be styled plaintiff.

authorize the condemnation under the specific facts of the case,[2] the central inquiry again was whether the property was taken for a public purpose. Nowhere did we suggest that eminent domain was vested solely in the relevant government agency absent an authorizing statute favoring private entities.

If the legislature had intended to limit the power of eminent domain with respect to the construction of byroads, it would have expressly done so. The legislature has used such express language in NRS 37.035, which provides: "Only a public agency may exercise the power of eminent domain on behalf of a monorail or any other overhead or underground system used for public transportation, whether the monorail or system is owned by a private person or a public agency." Had the legislature intended the power of eminent domain to remain only with a government agency unless otherwise specifically stated, the language in NRS 37.035 would not be necessary. By expressly limiting the exercise of the power of eminent domain with regard to monorails and subways, but not limiting such exercise with regard to byroads, the legislature implicitly recognized the authority of private entities to condemn property for the construction of byroads. The only limitations on the authority are that the property must be taken for a public purpose, and the entity seeking the property must be in charge of the public use for which the property is sought. *See* NRS 37.070(2).

In the present case, both parties concede that the use for which the property is sought is a public use and is necessary for that public use. Additionally, under the CC&Rs and GHOA's bylaws, GHOA owns the byroad and has been charged with maintaining and improving the roadways within the community; thus, GHOA is in charge of the public use for which the Pettitts' property is sought. Accordingly, we conclude that GHOA may condemn the property necessary to correct the defective condition of the byroad.

## CONCLUSION

For the reasons discussed above, the order granting summary judgment to the Pettitts is reversed, and this matter is remanded to the district court with instructions to enter summary judgment in favor of GHOA.

---

[2]In *Eisenman,* one mining company sought to condemn property for mining purposes when the property was already devoted to legitimate mining purposes and the condemnor's proposed activities would extinguish or seriously interfere with the condemnee's mining use.